Argued September 26, affirmed October 22, 1918.

## STATE *v.* MORRIS.*

(175 Pac. 668.)

**Witnesses—Diagrams of Brands—Use.**

1. In a prosecution for larceny of a horse, diagrams resembling the brands on the horse were admissible to illustrate the testimony of the witnesses.

**Witnesses—Diagrams of Brands—Relevancy.**

2. That a horse alleged to have been stolen was exhibited to the jury in order to understand testimony given did not make irrelevant diagrams of brands on the horse used for the same purpose.

**Criminal Law—Evidence—Diagram of Brand.**

3. Admission of diagram of brand on a horse, alleged to have been stolen, drawn by the witness, was not error despite a statement by the witness that he did not know whether he could make the "sketch as crooked as the original brand."

**Larceny—Evidence—Ownership.**

4. In a prosecution for larceny of a horse, a chattel mortgage given by a witness for the purchase price of horses, not including the one in question, *held* irrelevant on the question of ownership of the horse stolen.

**Larceny—Evidence—Ownership.**

5. In a prosecution for larceny of a horse, defendant could not prove ownership of the animal by showing that he had mortgaged it or that he had been sued by an outside party for its possession.

---

*On brand as evidence of ownership of cattle, see note in 11 L. R. A. (N. S.) 87.    REPORTER.

**Witnesses—Evidence—Interest of Witness.**

6. In a prosecution for larceny of a horse, evidence that defendant's witness traveled 100 miles without a subpoena to attend the grand jury investigation of the crime, and voluntarily appeared before that body, was admissible as showing the interest of the witness.

**Animals—Evidence of Ownership—Brand.**

7. A brand is admissible in a prosecution for larceny of a horse to show previous ownership, although not recorded as required by Laws of 1915, Chapter 33, Section 8.

[As to brands on animals as evidence of ownership, see note in Ann. Cas. 1913E, 133.]

**Criminal Law—Evidence of Other Offenses—System.**

8. In a prosecution for the larceny of a horse, evidence that, about the time of the theft, other animals owned by other parties were also found in his possession or claimed by him, was admissible as showing a system of crimes.

**Criminal Law—Best Evidence—Change of Brand.**

9. In a prosecution for the larceny of a horse, it was not error to refuse to receive in evidence the contents of a letter claimed by defendant to have been received from the state veterinarian authorizing him to change his brand, such change of brand being provable as a public record.

**Criminal Law—Instructions—Form and Defect.**

10. In a prosecution for the larceny of a horse, an instruction as to the purpose for which evidence of brands was admitted *held* correctly refused as requiring a declaration of legal effect of the evidence and as emphasizing evidence.

From Crook: T. E. J. DUFFY, Judge.

Department 2.

The defendant was indicted for, tried and convicted of the crime of larceny of a gelding, which crime was charged to have been committed on the fifteenth day of February, 1915, in Crook County, Oregon. The defendant appeals to this court alleging certain errors, which will be discussed in the opinion.    AFFIRMED.

For appellant there was a brief over the names of *Mr. N. G. Wallace* and *Mr. Vernon A. Forbes,* with an oral argument by *Mr. Wallace.*

For the State there was a brief over the names of *Mr. George M. Brown,* Attorney General, *Mr. Willard*

*H. Wirtz,* District Attorney, and *Mr. Jay H. Upton,* with an oral argument by *Mr. Brown.*

McBRIDE, C. J.—In order to properly understand the contentions it will be necessary to state briefly the theories of the state and the defendant. The state's theory was, that the animal in question was the prop-erty of Paul Held, an extensive stock owner in Crook County, and that the defendant had converted it to his own use, and for the purpose of creating false *indicia* of his ownership had made over and altered the brand of Paul Held upon the animal so it resembled his own. The following facts appeared in the testimony:

When defendant first began to run horses upon the range he adopted a brand, or device, known as a clover leaf or club, which resembles the club on a playing card and appears, as nearly as the writer is able to portray it, as follows: ♣ This brand was first burned indiscriminately on any part of the animal, but when the branding law of 1915 was passed defendant made application for its use on both jaws only. In the same vicinity one W. W. Brown had for several years used what is called a "Bar Horseshoe" brand, which resembles the following sketch: ∩ , and Paul Held, another stockman in the vicinity and the claimant of the horse in controversy, used what is called the "Rocker P" brand, which resembles the following sketch: ᑭ In 1915 the defendant obtained permission from the state veterinarian to use the club brand with the addition of a quarter circle beneath, giving it somewhat this appearance: ♣ It was claimed by the state that defendant had changed the brand of Held upon the animal in question from a "Rocker P" to his club brand

by burning the same over as follows, the dotted lines showing the alleged alterations : ⌀, and there was evidence tending to show that such alterations had been made. The defendant claimed the animal as his own so there is no question as to his possession of it, the sole matter in dispute being as to whether or not such possession was a guilty one.

1, 2. In the course of the trial several witnesses testified as to the brands upon the animal in question. At the request of the district attorney diagrams were drawn purporting to resemble the brands, which were received in evidence over defendant's objection, the ruling of the court being assigned as error. We see no reason why these diagrams should have been excluded. They stand upon the same footing as maps and plats. Diagrams drawn to illustrate the testimony of a witness, however crude, are constantly admitted and used. The fact that the animal in controversy was exhibited to the jury did not destroy the relevancy of the diagram. The horse was not offered as testimony, nor made an exhibit in the case, nor sent up with the record on appeal. The jury were merely permitted to examine the animal 'for the purpose, as the court informed them, of enabling them to understand the testimony. The authorities substantially agree that such view is not in itself substantive evidence. There was no error in the ruling of the court.

3. Error is also predicated upon the ruling of the court permitting the prosecution to ask E. B. Wade, a witness for the defendant, to make a diagram of the brand upon the horse in controversy, and allowing the diagram so made by the witness to be admitted in evidence. The question arose in the following manner:

Counsel for the state, while cross-examining the witness, said:

"Now I am going to ask you to make a diagram of the brand that is on this horse."

Mr. Wallace, counsel for defense:

"We object to that as being incompetent, irrelevant and immaterial, and for the further reason that it is not proper cross-examination because the witness did not attempt to go into any description of the brand at all, absolutely none."

Mr. Wirtz: "He was present when this brand was put on and he has examined the horse he says, and ought to be able to make the brand that is on the horse."

Mr. Upton: "And he described, your Honor, how the brand was put on with the iron."

The Court: "You may cross-examine on that," to which ruling defendant excepted.

Mr. Wirtz: "Will you make a diagram of the brand on the horse jaw?"

Witness: "I will try. I don't know whether I can make it as crooked as that one is."

Witness made a diagram of the brands upon the animal, which, though they would not take a prize in the Academy of Fine Arts, compare favorably with the other sketches introduced in evidence. We do not think the modesty of the witness in saying that he did not know he could make the clover leaf sketch as crooked as the original brand, detracted from the value of his sketch, especially when viewed in connection with his testimony and the other sketches submitted.

4. Witness Wade testified among other matters, that in 1909, he bought a band of horses from one Ed De Lore, which were branded with a trowel brand, one of the horses being a mare and the mother of the horse in controversy; that when the colt was little he put the trowel brand on it because its mother was so

branded; that the animal in question was about three years and one month old at the time of the trial (March 11, 1918); that he did not pay cash for the horses but gave De Lore a mortgage for the purchase price, whereupon the mortgage was offered in evidence and upon objection of the state was excluded. The chattel mortgage was given in 1909 and did not include the horse in question and had no relevancy whatever to the controversy. The fact that in 1909 the witness bought a mare with a trowel brand upon her and gave a mortgage to secure the payment of the purchase money, had no tendency to corroborate his statement that in 1914 a colt was born to that mare and that he branded the colt with a trowel brand and sold it to defendant. The testimony offered is akin to that proposed by Jack Cade to prove that he was the Earl of Mortimer and grandson to the Duke of Clarence.

Cade: "Edmund Mortimer, Earl of March, married the Duke of Clarence's daughter, did he not?"

Stafford: "Ay, sir."

Cade: "By her he had two children at one birth."

Stafford: "That's false."

Cade: "Ay, there's the question, but I say 'tis true;
The elder of them being put to nurse,
Was by a beggar woman stolen away,
And ignorant of his birth and parentage
Became a bricklayer when he came of age,
His son am I; deny it if you can."

Smith: "Sir, he made a chimney in my father's house
And the bricks are alive to this day to testify it:
Therefore, deny it not."

The witness further testified in substance that in 1916 he sold this particular horse, which was then two years old, to the defendant; that he was then a stal-

lion, and at the time of the transfer witness, in company with the defendant and others, threw the horse down, castrated him, and placed the clover leaf, or club, brand on both jaws. In short, if the jury had believed this witness, his testimony made a complete case for the defendant.

5. The defendant also offered in evidence a complaint in an action of replevin, wherein Boze De Lore was plaintiff and Newt Morris was defendant, in which action De Lore sought to recover from Morris 35 head of horses branded on both hips with a trowel with a quarter circle beneath, claiming the right of possession by reason of a chattel mortgage given by Morris to him, the conditions of which mortgage had been broken. There was nothing in the mortgage to identify the horse in controversy as one of those included in the chattel mortgage, and even if there had been the evidence was incompetent. Defendant could not prove ownership of the animal by showing that he had mortgaged it, or that he had been sued by an outside party to recover possession of it. The evidence was properly rejected.

Exception was taken to the refusal of the court to permit defendant's counsel to interrogate J. H. Upton, of counsel for the state, in reference to his appearance as counsel in the case of *De Lore* v. *Morris,* above referred to. The relevancy of the question was not apparent and counsel for defendant made no statement as to what he expected to prove by the witness, although given an opportunity to do so. On the showing made it would appear, if the record of that trial was inadmissible, that oral testimony in regard to what occurred thereat would also be incompetent. Upon the record made we cannot say that the court erred in its ruling.

6. Another exception is to the ruling of the court permitting the state to cross-examine Jesse Allison, a witness for defendant, as to his activities on behalf of the defendant. The question tended to and in fact did elicit the information that the witness left his business without a subpoena and traveled one hundred miles to attend the session of the court when the transaction in question was being investigated by the grand jury; that he came in company with defendant and voluntarily appeared before that body, and that he attended the trial then pending without a subpoena. The interest of a witness in the subject matter, his hostility to or friendship for a party, are always factors which enter into an appraisement of the value of his testimony, and both reason and authority sustain the court's ruling.

7. An objection more plausible but unsound in our judgment, was made to the admission of the record of the "Rocker P" brand of Paul Held. It appeared from the evidence that Held had used this brand for about eleven years, but that it had not been recorded with the state veterinarian until July 23, 1917. The indictment charged that the larceny was committed February 23, 1916. It is objected that the record of the brand was inadmissible to prove ownership of the animal in question by Held prior to the time the brand was recorded. Section 8, chapter 33, Gen. Laws of 1915, is as follows:

"In all suits at law or in equity, or in any criminal proceedings when the title or right of possession is involved, the brand of any animal shall be *prima facie* evidence that the animal belongs to the owner or owners of the brand, and that such owner is entitled to the possession of the said animal at the time of the action; *provided,* that such brand has been duly recorded as provided by law. Proof of the right of any person

to use such brand shall be made by a copy of the record of the same, certified to by the state veterinarian in accordance with the provisions of this act, or the original certificate issued to him by the state veterinarian. Parol evidence shall be inadmissible to prove the ownership of a brand."

Without consuming space by further discussion, we are of the opinion that *State* v. *Randolph*, 85 Or. 172 (166 Pac. 555), settles this contention adversely to defendant. That case was thoroughly discussed and considered, and we adhere to it *in toto*. The fact that the indictment charges the offense to have been committed in 1916 is not material, as it is sufficient in this case if the proof shows the commission of the crime at any period within three years before the finding of the indictment, and it is not probable that the crime was committed, if committed at all, before the defendant began using the club brand with the quarter circle underneath, which was in December, 1915.

8. The state, over the objection of defendant, was permitted to introduce evidence tending to show that about the time the animal in question was found in defendant's possession, other animals owned by other parties were also found in his possession or claimed by him, which exhibited evidence of having upon them worked over brands similar to that upon the animal in question. As a general rule evidence of other crimes is not admissible, but where the evidence tends to show the commission of a system of crimes by unusual methods, it is admitted. In the case at bar a single instance of rebranding might be attributed to a mistake as to the ownership, or to accident, or carelessness in branding in the first instance, and in order to show system, motive and intent, the evidence was competent: *State* v. *O'Donnell*, 36 Or. 222 (61 Pac.

802); *State* v. *Germain,* 54 Or. 395 (103 Pac. 521); *State* v. *La Rose,* 54 Or. 555 (104 Pac. 299); *State* v. *McClard,* 81 Or. 510 (160 Pac. 130).

9. Error is predicated upon the refusal of the court to permit defendant to testify as to the contents of a letter which he claimed to have received from the state veterinarian, authorizing him to put a quarter circle beneath his club brand, which letter he claimed to have lost. The law points out the way in which changes in brands may be made and in which the record of brands may be perpetuated. The transactions of the state veterinarian's office are public records and the proper way of proving permission to change a brand or to adopt a new brand should be proved by certified copies of such records, which were not shown to be unavailable, and the evidence offered was incompetent. Conceding that defendant had the right to use the club brand with the quarter circle beneath it, and there is testimony indicating that he did have that right, it is difficult to see how that fact could have any bearing upon this case. The contention of the state is that defendant committed larceny by "working over" Held's brand so as to make it resemble his own, thereby destroying proof of the identity of the animal. It was not unlawful for him to brand his horses with a "Rocker P" or any other brand or device he chose, either with or without permission of the state veterinarian, provided such device did not interfere with or simulate the brand of any person having a prior right thereto. The law merely prohibits evidence of such brand being given for the purpose of identification or to prove ownership.

10. Error is predicated upon the refusal of the court to give the following instruction:

"You are instructed that in this case the defense has offered in evidence a certified copy of the brand of E. B. Wade. This was not offered nor received for the purpose of showing ownership of the animal at this time nor at the time of the alleged taking, but was offered for the purpose of showing that E. B. Wade had the right under the old brand law to use this particular brand at the time it is claimed that E. B. Wade branded the animal in question. You are further instructed that in the month of June, 1914, the said E. B. Wade had the right to use the so-called trowel brand on either or both stifles, and that if he branded the animal in question at that time with this brand, then the brand on the animal was evidence that E. B. Wade owned the animal upon which it was found. This was the law until May 9th, 1915, when the new brand law went into effect. The certificate of the brand of E. B. Wade is not before you for the purpose of showing ownership in the animal nor the right to use this brand. at this time, but for the purpose above mentioned."

The instruction is faulty because it required the court to declare the legal effect of the evidence, and because it singled out a particular item of the testimony, and required the court to instruct specially upon that, thereby giving it undue prominence, which is always reprehensible. The testimony had been admitted and was before the jury for their consideration in connection with all the circumstances of the case. The instruction was likely in any event to be misleading and was properly refused.

This case was ably tried on behalf of defendant and every circumstance that could possibly tend to his exculpation was presented to the court and jury by able counsel. A perusal of the record convinces us that his trial was fair in every respect and that judgment was such as should have been rendered and it is therefore affirmed.          AFFIRMED.

BEAN, HARRIS and JOHNS, JJ., concur.