STATE, Respondent, *v.* RUSSELL et al., Appellants.

(No. 7,077.)

(Submitted January 5, 1933. Decided January 21, 1933.)

[18 Pac. (2d) 611.]

*Mr. E. K. Cheadle, Jr.,* for Appellants, submitted an original and a supplemental brief and argued the cause. orally.

*Mr. L. A. Foot,* Attorney General, *Mr. T. H. MacDonald,* Assistant Attorney General, and *Mr. Walter Knaack,* County Attorney of Toole County, for the State, submitted a brief; *Mr. MacDonald* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

An information charging grand larceny was filed in the district court of Toole county against Howard Russell, Sherman Baxter, and Orville Page. Russell and Baxter were tried together and a jury found them guilty and fixed their punishment at one year each in the state prison.

The defendants were charged with larceny of certain automobile tires and accessories of the alleged value of $200, the property of J. L. Stein.

Russell and Baxter have appealed from the judgment and from the court's order overruling their motion for a new trial. The appeal was presented upon several specifications of error, but the case may well be considered under two general headings: (a) Rulings upon the admission of specific evidence; and (b) was the evidence as a whole sufficient to support a conviction?

The owner of the property testified to having left his car, ██ with the accessories in question, at a point near his home in Shelby on the evening before the alleged larceny, and of having observed the absence of the accessories the next morning. He told of going to Great Falls a day or two later, and of seeing the accessories there in the possession of officers who had taken them from the defendants. He testified positively that he recognized the property and that it was owned

by him. Objection was made that his identification was not based upon marks or brands but was general. The witness maintained that he did not have to rely upon brands or marks, but that he had seen the property every day for two years and knew that it was his.

The evidence was clearly admissible and, the jury having believed it, the defendants cannot complain. Similar testimony was approved by the supreme court of Washington, in the case of *State* v. *Taylor*, 159 Wash. 614, 294 Pac. 260, 261; the court saying: "It is first contended in this connection that there is not sufficient evidence to support the finding that the wire found in the possession of the appellant, in the city of Seattle was the wire stolen from the telephone company at Marysville. It is true that the witnesses testifying on this point could not identify the wire by any specific marks upon it. The most they could say was that the wire found in the appellant's possession and the wire stolen were of the same character, were of the same gauge, and were the same in quantity. It would seem that had the evidence shown nothing more than this, it would still have been a question for the jury." In the early California case of *People* v. *Keane*, 43 Cal. 638, the court approved similar testimony.

It is also urged that it was error to allow Stein, the owner of the property to testify as to its value. It is a well-established rule that the owner of personal property who is familiar with its original cost and use is qualified to testify regarding its value, independently of knowledge of recent sales of similar second-hand property. (*People* v. *Haney*, (Cal. App.) 14 Pac. (2d) 854.) There was other competent evidence as to value in the record, so that point was covered aside from the testimony of the owner.

Witnesses J. L. Thor and Howard Ramsey were allowed to testify, over objection of defendants, that on the same night that the Stein property was taken similar accessories were taken from their cars as they stood parked in the town of Shelby. These parts were located in the possession of the defendants in Great Falls on the morning of the 19th of July,

in the same car with the Stein property. This testimony was intended to show a system of stealing by these defendants and was admissible for that purpose.

This court, in *State* v. *Hill*, 46 Mont. 24, 126 Pac. 41, 43, said: "Evidence of other similar crimes, committed at about the same time, if calculated to identify the perpetrator of the particular crime charged, or to show the intent with which an alleged criminal act was committed, or that it was part of a system or chain of similar crimes, is admissible." (*State* v. *Hall*, 45 Mont. 498, 125 Pac. 639; *Myers* v. *People*, 65 Colo. 450, 177 Pac. 145; *Oldham* v. *State*, 42 Okl. Cr. 209, 275 Pac. 383; *State* v. *Morris*, 90 Or. 60, 175 Pac. 668.)

This testimony was admissible under the ruling in the recent case of *State* v. *McCracken*, ante, p. 269, 18 Pac. (2d) 302, in which case this court approved the admission of testimony as to the driving away of horses other than the subject of the alleged larceny and owned by other parties; all of the horses being driven away together by the defendant and his employees or agents. In that case the court said: "At any rate, the testimony was admissible as a part of the *res gestae*." (Citing *State* v. *Broadwater*, 75 Mont. 350, 243 Pac. 587.)

No error was committed in the admission of the particular items of testimony heretofore discussed, but the defendants urge that the evidence as a whole was insufficient to sustain a conviction and that their motion for a verdict of acquittal should have been sustained. We do not agree with this contention. The property being identified, the value being established, and the unlawful removal proven, these elements can be considered as settled.

The property was removed from Shelby to Great Falls between the late evening of the 18th and the morning of the 19th of July. Between the hours of 8:30 and 10:30 of the 19th, the defendants were found in possession of all of the property at Great Falls. When the tires, tubes and other parts were first seen in their possession in the Star car used by the defendants, they were in what might be termed an "assembled condition"; that is, the wheels, rims, tubes and

casings were in place. The witness Ira Starr testified that he knew the defendants and lived near the "Moody place" where they were staying; that they had been around the "Moody place" near his home every day from a time a few days after the 4th of July until about the 14th or 15th of July; that he did not see them after the last-mentioned date until the morning of the 19th of July at about 10:30, when they drove into the "Moody place" with the Star coach laden with wheels, tires, rims, and so forth, in place or assembled; that soon after they arrived at the "Moody place" where defendants were staying, the Moody brothers drove up and entered into a conversation with the defendants. One of the Moody boys, while looking at the parts, said, "These would make a damn good outfit for our Ford." One of the defendants said, "Damn if you are, we are going to sell these and get some money, we will get you some more."

The defendants proceeded at once to disassemble the parts. They took the tires off the rims and rolled them into an outhouse where they were afterwards found. They loaded the wheels and rims in Moody's truck and drove away with them. When they came back a short time later, they did not have them. The evidence does not disclose what defendants did with these parts. The act of dismantling and the removal of the wheels and rims naturally made the remaining property more difficult of identification.

The defendants testified in their own behalf and their co-defendant Orville Page testified for them. He said that he bought the tires from a man named Ed Lewis in Great Falls about 8 o'clock on the morning of the 19th of July. Page testified that he went downtown alone on that morning and after he purchased the tires he encountered the defendants Russell and Baxter and took them in the Star car with him and drove to the Moody place, with the tires and accessories. Page said, "I bought the tires and did not undertake to dismount them there." He was warned by counsel not to volunteer anything and the subject was dropped. Nobody apparently was interested in what became of the wheels, rims, and

so forth, although the defendant Russell did say, ''Mr. Page loaded them back in the car and took them back to town.''

It has been held by this court, following the rule recognized ■ everywhere, that mere possession of property recently stolen is not alone sufficient to convict the possessor of the larceny of it, although it is a strong circumstance indicating guilt. When, however, such fact is supplemented by other facts inconsistent with the idea that the possession is honest, such as the giving of a false or improbable explanation of it, or a failure to explain, where a larceny of the property is charged a case is made sufficient to submit to the jury.

Defendants urge that under the ruling in *State* v. *Ebel*, 92 Mont. 413, 15 Pac. (2d) 233, 237, recently decided by this court, this case should be reversed. The *Ebel Case* was a burglary case. The error occurred in the admission of testimony. In that case the court said, in speaking of the testimony under scrutiny: ''The evidence admitted as to a former crime was insufficient to prove a larceny and wholly failed to connect the defendant with the former burglary, and its admission, under all of the authorities constitutes reversible error.''

In the instant case it may almost be said that the evidence of the other acts were part of the main transaction, therefore part of the *res gestae*. All three of the cars from which accessories were removed were left standing in the open in Shelby about the same time, and all of the property was taken on the same night, and all found at Great Falls at the same time the next morning in the possession of the defendants. It therefore can hardly be said that the evidence related to other, and it certainly cannot be said that it related to former, transactions.

While the *Ebel Case* announced the rule as to circumstantial ■ evidence, the court said: ''The evidence is sufficient to meet the requirements as to proof of a crime by circumstantial evidence, to wit, that the criminatory circumstances must be consistent with each other and point so clearly to the guilt of the accused as to be inconsistent with any rational hypothesis other than his guilt.'' (Citing *State* v. *Riggs*, 61 Mont. 25, 201 Pac. 272; *State* v. *Hood*, 89 Mont. 432, 298 Pac. 354.)

As stated, the defendants went upon the stand; they denied everything except the possession of the property, and attempted to account for that. With the denials they coupled the defense of alibi, being supported in that behalf by testimony of their witnesses. All of these matters of defense were submitted to the jury under proper instructions. The explanations of the defendants apparently were not convincing. The jury saw the witnesses, observed their demeanor upon the stand, heard the evidence, and considered it in the light of the instructions. Apparently the jury was not impressed with the truth or substance of the explanations and of the defense as a whole. It was the province of the jury to judge of the truth, weight, and sufficiency of the asserted defenses. We cannot say that there was no substantial evidence to sustain the verdict. In our opinion the evidence, if believed by the jury, as it must have been, was sufficient to sustain the conviction of the defendants under the general rule, and particularly under the rule laid down in the *Ebel Case.*

The judgment and order are affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.