## STATE v. POLLOCK et al.

No. 6413. Decided October 3, 1942.   (129 P. 2d 554.)

See 22 C. J. S., Criminal Law, sec. 663; 20 Am. Jur., 289.

Rehearing denied January 25, 1943.

*J. Vernon Erickson,* of Richfield, for appellants.

*Henry D. Hayes,* of Richfield, *Grover A. Giles,* Atty. Gen., and *Zar E. Hayes,* Deputy Atty. Gen., for respondent.

WOLFE, Justice.

Defendants, appellants here, were convicted of the crime of maliciously killing another's animals.

The defendants prosecute this appeal maintaining that the trial court erred in two particulars. First, that there was error by the court in the admission of evidence tending to show that other and separate offenses were committed

by defendants, thus prejudicing the jury. Further, that evidence of such collateral crimes was improperly admitted prior to evidence produced which "implicated the defendants in the crime charged." Second, that the court erred in denying a motion for new trial because the verdict was contrary to the evidence.

The jury found the defendants guilty of "maliciously killing two head of cattle belonging to Usher Spencer." The act was committed on or about July 21, 1940, at Johnson Precinct, Kane County, Utah.

From the record it appears that the Escalante Cattle Association employed Marion Woolsey to enter the Pollock Allotment in search of cattle belonging to the members of the Cattle Association. Woolsey and Lenza Wilson, a volunteer, left Escalante on July 9, 1940, and proceeded to the Pollock Allotment.

Lenza Wilson testified that on their way through the "creek district" on July 12, 1940, he had observed several head of cattle. Among them was a brockle-faced cow branded and testified to as belonging to Usher Spencer. This cow was accompanied by a spring calf; there was also a cow branded and her short yearling heifer belonging to Gayle Bailey. The heifer had Pollock's brand and mark on it. Also a steer with a recent Pollock brand which covered and mutilated an older but different brand was in this herd.

Upon their return to the "creek district," Wilson testified, he came upon the steer, previously observed with the mutilated brand, dead. It had been shot. Near by was a fresh camp site with the tracks of two horses and a mule, later identified as belonging to the defendants. This was on July 21, 1940. A few hours later he saw the defendants driving several head of cattle along the bottom of a gulch. He followed them for several miles. Finally, the defendants stopped and cut out of the herd the brockle-faced cow and spring calf, previously seen on July 12th, and testified to as belonging to Usher Spencer. The defendants then drove the cow and calf up an adjoining creek. Wilson followed

for a short distance and hid. He heard two shots. The defendants returned without the cow and calf and rode off. Wilson then entered the canyon and followed the tracks which plainly showed in the wet creek bottom to where he found the bodies of the dead animals. Bullet holes were observed at the butt of the ear in each animal.

Wilson hurried after the defendants and caught up with them in time to see them cut out the Gayle Bailey's cow and her short-yearling heifer, the heifer having the Pollock brand and mark. The heifer was shot, decapitated, and skinned. The head and carcass was then hidden among some rocks nearby.

On the following day Wilson took Woolsey and showed him the dead animals. Woolsey confirmed Wilson's testimony as to the location and condition of the animals.

The defendants admit that they were on the desert at this time, but claim that they were busy branding some calves on July 21, 1940. They both denied having in their possession any firearms or having killed the cattle in question or any cattle.

The Pollock Allotment is located in an isolated and deserted section of one of Utah's southernmost counties. The canyon in which the Usher Spencer's cattle were killed had no sign of human presence other than that of the defendants and witnesses Wilson and Woolsey.

It is the defendant's contention that the admission of evidence tending to show another crime independent of and unconnected with the one on trial was error and "highly prejudicial to the defendants in the minds of the jury."

But the other killings were not independent of nor unconnected with the crime with which defendants are charged. The killings were all committed within a period of a few hours on July 21st. They were not isolated acts. They were transactionally connected in such a way as to constitute one entire transaction. The killings were a series of acts so similar in time and common purpose as to be considered parts of a whole. The very narration of

the killings was hardly severable. The narration of the killing of Usher Spencer's cattle involved the narration of the other killings in order to identify the defendants as the killers of the Spencer cattle. An analysis of the evidence will bear this out. These killings can all be considered as parts of a single event. The fact that two parts of a whole transaction may be distinct crimes does not prevent the whole transaction from being introduced if relevant to throw light on the part charged as a crime. Otherwise, a person could save himself from being confronted with damaging evidence by so conducting a part of his overall transaction so as to bring it within the criminal law. This is not the case of isolated transactions such as previous acts of sexual intercourse with a prosecutrix. The killings in the instant case were all components of a completed transaction which could scarcely be separated without detriment to furnishing material circumstances mutually illuminating as to all the killings, whichever had been made the basis of a charge.

The other killings were also admissible under the rule that seemingly unconnected crimes are admissible where they tend to prove identification of the accused, motive, plan, knowledge or ability. *State* v. *Kappas*, 100 Utah 274, 114 P. 2d 205.

We again quote with approval from the case of *State* v. *Morris*, 90 Or. 60, 175 P. 668, 670, as set out in the Kappas case, supra:

"As a general rule, evidence of other crimes is not admissible; but, where the evidence tends to show the commission of a system of crimes by unusual [why unusual is questionable] methods, it is admitted. In the case at bar, a single instance of rebranding might be attributed to a mistake as to the ownership, or to accident, or carelessness in branding in the first instance, and, in order to show system, motive and intent, the evidence was competent."

Other recent cases expressing this well settled exception to the general rule are, *Sawyer* v. *State*, Okl. Cr. App., 119 P. 2d 256; *Nemecek* v. *State*, 72 Okl. Cr. 195, 114 P. 2d 492,

135 A. L. R. 1149; *People* v. *King,* 122 Cal. App. 50, 10 P.
2d 89.

In the light of this exception to the admission of other
crimes we touch specifically on part of the evidence.

Several cattlemen testified that in their opinion cattle
would not "drift" from the Escalante Town Allotment
twenty or thirty miles through range fences and natural
obstructions to the "creek district" of the Pollock Allotment.

The inference which might be drawn from this was that
what was designated the Gayle Bailey's cow and heifer,
Usher Spencer's brockle-faced cow and spring calf and the
steer with the mutilated brand were driven, rather than
that they had wandered to the "creek district." There is
evidence that Wilson saw all these cattle in the "creek dis-
trict." There is evidence that the defendant learned that
there were investigators (Wilson and Woolsey) in the dis-
trict. There is evidence that on the morning of July 21st
the investigators' horses and certain cattle under their
charge were in the creek bottom, while one of them was
resting under a tree and that defendants rode up among
these cattle and then turned and galloped back up the creek.
The jury could fairly assume that the defendants knew that
there were investigators around; that they may have sur-
mised that the three sets of cattle above mentioned would
be found in their allotment and that they decided to destroy
those cattle in order that the finger of suspicion could not
point to them as the ones who had driven the cattle away on
the supposition that they may all have been seen far away
from their ordinary locale, and, in fact, they were so seen
by Wilson on July 12th. Like miscellaneous articles seen
grouped together later identification of one with a defen-
dant might seem to connect him with other articles seen
earlier in a group. This would furnish a sufficient motive
or reason for the acts of the defendant.

The plan seemingly was the intended destruction of cattle
which might incriminate the defendants. However, it is

not necessary to fasten accurately on one motive as compared to another, if either one or two motives will reasonably explain the acts of the defendant. Motives may be locked in the mind of the defendant or he may act from pure wantonness. It is sufficient if the transactions are consistent with a motive or plan which reasonably seems inferable from the facts and circumstances. Nor does the fact that there is missing in the evidence one or more small pieces seemingly necessary to fully complete the mosaic of a complete plan or scheme render the evidence of motive or purpose inadmissible if such evidence reasonably tends to show a certain reason for committing the alleged crime. Likewise, even though some parts of the evidence may partially seem to confuse or contradict the supposed purpose or motive, if on the whole the evidence tends to establish it. Also, because the sum total of all the connected acts or part of them may be reasonably explainable on a hypothesis other than the plan, scheme or motive seemingly revealed by the apparently connected acts, is no reason for rejecting the evidence if the acts are at least as consistent with the existence of the plan, scheme or motive which they seem to reveal.

As a further point, appellants in their brief argue that the court erred in admitting evidence of these collateral crimes before the evidence in chief to establish the corpus delicti was given. A careful reading of the record establishes that this is not so. Witness Wilson began testifying about the killing of Gayle Bailey's heifer but was stopped by an objection. He proceeded to describe the killing of Usher Spencer's cow and calf and, although he inadvertently named the animals as belonging to Gayle Bailey, the testimony leading up to the description and subsequent thereto clearly and definitely establishes the testimony as being a description of the killing of Usher Spencer's animals. Such being the case, the evidence in chief having been placed ahead of the collateral crimes, appellants' objection is groundless.

However, had the evidence of the other crimes been presented before the evidence of the crime, no reversible error would have been committed in this case. In ■ accord, Wharton, Vol. 1, Section 356, 12th Edition on Criminal Law, says:

"In theory the corpus delicti should be satisfactorily established before any proof of the criminal agency in bringing about the state of facts is presented to the jury, that is, before the jury can proceed to consider who committed the crime; but in practice the criminal agency of accused in the transaction—as in producing death of deceased—is frequently so involved that the testimony of both issues is accepted at the same time; that is to say, in some cases the evidence establishing the existence of a crime at the same time points out the guilty agent of that crime, while in others the evidence of the crime is visible, but the perpetrator is unknown."

See dissenting opinion in *State* v. *Johnson*, 95 Utah 572, 83 P. 2d 1010, at page 1020, and *State* v. *Erwin*, 101 Utah 365, 120 P. 2d 285, at page 296, wherein Wigmore on Evidence, 2nd Edition, Section 1867, is quoted with approval by this court:

"It is obvious that while a usual order for introducing topics of evidence and witnesses is a desirable thing, a variation from that order, which is often equally desirable, will not necessarily cause direct harm; it can do so only where it tends to confuse the jury, or where it misleads the opponent or finds him unprepared to meet it. Moreover, the necessity for such a variation and the likelihood that it will confuse or mislead must depend almost entirely upon the particular circumstances of each case.

"Accordingly, it is a cardinal doctrine, applicable generally to all of the ensuing rules, that they are not invariable, that they are directory rather than mandatory, and that an alteration of the prescribed customary order is always allowable in the [sound] discretion of the trial court."

The court did not err in refusing to grant defendants' motion for a new trial. The verdict as rendered by the jury was not contrary to the evidence. ■

In the instant case, the defendants were seen driving the cattle up a canyon by the witness Wilson. It is true Wilson did not see the cow and calf shot; however, he saw the

defendants enter the canyon with the animals, heard the shots, and saw them return without the animals. Wilson immediately followed the "horse tracks and tracks of the cow and calf" to where the dead animals were found. Wilson saw no one else in the vicinity. The creek was isolated in a deserted part of the range. Such strong circumstantial evidence would well support the finding of defendants' guilt by the jury. When considered with the evidence of the other killings, there can be no possible doubt that the evidence is sufficient to sustain the conviction of appellants.

The verdict and judgment appealed from is affirmed.

McDONOUGH, J., concurs.

LARSON, Justice (concurring).

There was much evidence admitted in this case for which I can find no basis. Much of it seems to be wholly irrelevant and immaterial. A number of cattle men testified that in their judgment cattle would not drift from that part of the range called the Escalante Town Allotment to the Pollock Allotment. No reason or basis for this evidence was given and no proper one is deducible from a perusal of the record. It would seem to have been offered as innuendoes to prejudice the jury. Since, however, no objection was made and none is argued, we have adverted to it only because of a bearing upon what follows in this opinion. After putting in this evidence the state adduced evidence of the crime charged, and then evidence of claimed other offenses. Such evidence cannot be received as proof of other offenses, but is only to be received when it is relevant as fairly tending to prove a fact material to the issue in the case before the court. *State* v. *Wyman,* 56 Mont. 600, 186 P. 1; *State* v. *Hill,* 46 Mont. 24, 126 P. 41; *State* v. *Leroy,* 61 Wash. 405, 112 P. 635; *State* v. *Starr,* 24 N. M. 180, 173 P. 674; *People* v. *Glass,* 158 Cal. 650, 112 P. 281. Evidence of other transactions may be given if it fairly tends to prove the motive or intent of defendant in committing the offense charged.

*State* v. *Horne,* 62 Utah 376, 220 P. 378; *State* v. *Bowen,* 43 Utah 111, 134 P. 623; *State* v. *Kappas,* 100 Utah 274, 114 P. 2d 205; *State* v. *Siddoway,* 61 Utah 189, 211 P. 968. But the evidence of the motive for the commission of the crime charged must grow out of the collateral crime. *People* v. *Glass, supra; People* v. *Cook,* 148 Cal. 334, 341, 83 P. 43; *People* v. *Brown,* 130 Cal. 591, 594, 62 P. 1072. It is not sufficient that both crimes may spring from the same motive. If so, one charged with a particular larceny could be convicted of many larcenies because all spring from the same motive—a desire for gain. Evidence is not inadmissible merely because it shows another crime, if it tends to show a common scheme or plan, embracing the commission of two or more crimes, so related to each other that proof of one tends to establish the other. Cases cited supra; *State* v. *Pino,* 21 N. M. 660, 158 P. 131; *State* v. *Graves,* 21 N. M. 556, 157 P. 160; *People* v. *Nakis,* 184 Cal. 105, 193 P. 92; *People* v. *McCarthy,* 14 Cal. App. 148, 111 P. 274. While such evidence is admissible in a proper case, the exceptions to the general rule excluding them "are carefully limited and guarded by the courts, and their number should not be increased." *State* v. *Willson,* 113 Or. 450, 230 P. 810, 233 P. 259, 39 A. L. R. 84, 94; *People* v. *Argentos,* 156 Cal. 720, 106 P. 65; *State* v. *Wheeler,* 89 Kan. 160, 130 P. 656; 22 C. J. S., Criminal Law, § 683, p. 1091.

When such evidence is received it is proper, and upon request necessary, for the court to instruct the jury as to the purposes for which such evidence has been introduced, admonishing them to confine the application of the evidence to such purposes. It has been said that it is the duty of the judge to so instruct. *Kelley* v. *State,* 18 Tex. App. 262, 269; *Alexander* v. *State,* 21 Tex. App. 406, 407, 410; *Holmes* v. *State,* 20 Tex. App. 509; *People* v. *Glass,* supra; *State* v. *Lewis,* 19 Or. 478, 24 P. 914; *State* v. *Rule,* 11 Okl. Cr. 237, 144 P. 807; Nichols App. Evidence, Vol. 4, p. 3428. But it has been held that while the court should so instruct, its failure to do so is not error, unless the instruction is asked

for. *People* v. *Gray*, 66 Cal. 271, 5 P. 240. See *Jenkins* v. *State*, 1 Tex. App. 346. In the case before us, objection to reception in evidence of the testimony as to other offenses was duly made, but no request was made that the court then advise the jury that the evidence was received only for a limited purpose, nor was any request made for an instruction admonishing the jury to consider such evidence only for particular purposes. In fact the record does not disclose what the purpose of this evidence was. The prevailing opinion states that it was to show a plan or scheme to kill all cattle not belonging to Pollock to prevent a suspicion of theft but the record does not disclose that the state offered it for that purpose, or so contended. Nor does the evidence support that contention. There is no evidence that any animals killed except the Spencer cattle belonged to anyone but Pollock himself. The Bailey cow was not killed. What is referred to as the Bailey calf, which was killed, had Pollock's brand, and no other brand. There is no evidence it was Bailey's calf; no evidence it was not Pollock's calf, except a long drawn inference from the fact it followed the Bailey cow. If the purpose set forth in the prevailing opinion is right, defendants would have killed the Bailey cow, and let the calf with the Pollock brand live. As far as there is any evidence about the LE steer, it indicates it was Pollock's animal. I think the only purpose any of this evidence could serve would be as tending to show Pollock was stealing cattle, and in the case of the LE steer had run the brand. That would indicate the killing was done to hide a theft, and was not a malicious killing of cattle under the statute under which the charge was laid. Proof of a theft, or of a killing to hide a theft cannot, under any construction which admits proof of the crimes, be pertinent to a charge of malicious killing. But no proper objection was made to the evidence, no motions to strike it, and no request that the court limit it or confine its purpose and consideration by the jury in the instructions given. No exception was taken to instruction number 8. Exception was taken to

number 9. That instruction is not in good form. It is merely an abstract statement of a rule of evidence, good for use in a text book, but is not a pertinent instruction to limit or guide the jury in considering any evidence in the case. But a mere abstract proposition of law, not pertinent to the case, and therefore not tending to mislead the jury, is not a cause for reversal.

Instruction number 8 was evidently intended by the court to cover the matters discussed supra, but even a casual perusal thereof shows it does not even approach the form or purpose of such instruction. It does not limit the purposes for which such evidence may be considered, or for which it was received. It covers every ground upon which so-called evidence of other crimes has ever been held admissible, without limitation or qualification, and indicates it is prejudicial evidence, that is very potent evidence against accused. It merely states a rule of admissibility for the court or for students at law, and not for guidance of the jury.

Since there was no proper objection to the evidence and no request for instruction on the matter any errors therein do not call for a reversal. Without this evidence, the record amply sustains the verdict and judgment. Under Section 105-43-1, R. S. U. 1933, we must affirm. *State* v. *Nell,* 59 Utah 68, 202 P. 7; *State* v. *Cluff,* 48 Utah 102, 158 P. 701; *State* v. *Siddoway,* supra. I therefore concur in affirming the judgment.

MOFFAT, Chief Justice (dissenting).

I dissent.

In the case of *State* v. *Kappas,* 100 Utah 274, 114 P. 2d 205, 208, relating to the admissibility of proof of other offenses, with authorities supporting, the court stated:

"As a general rule, evidence of other crimes is not admissible; but, where the evidence tends to show the commission of a system of crimes by unusual methods, it is admitted."

Just why is the evidence of other crimes not admissible? Fundamentally because such evidence is immaterial and has no probative value unless in some way related to the crime charged.

That there are so-called exceptions to the rule seems to be a misnomer. The introduction of a particular system to show related crimes may present material even substantial evidence; the commission of another crime to cover up or destroy the evidence of the crime charged becomes material, but such evidence is not an exception to the general rule excluding evidence of other crimes, it is material and related to the crime charged. Motive and intent may likewise become matters that are so related to the crime charged as to connect other crimes and thus become substantive evidence in proof of the alleged crime.

The matter is well illustrated as to the mischief that may be worked into a proceeding and the injustice done to a defendant by quoting the instruction given in the instant case upon the matter of unrelated alleged crimes.

"You are instructed that evidence of other offenses committed by the accused is admissible to show his identity as the perpetrator of the crime charged, and to prove guilty or criminal knowledge, with respect to the crime charged, at least if similar thereto, and occurring at or about the same time. Evidence of other offenses is also admissible to show, or where it tends to show, his criminal intent or purpose with respect to the offense charged, as tending to show his guilt thereof, and such evidence is particularly relevant where the other offenses are of the same or a like nature, and were committed at about the same time.

"Evidence of other offenses committed by accused is admissible to show, or when it tends to show, his motive with respect to the offense charged, as tending to show his guilt thereof, and is not to be excluded because it incidentally discloses a commission of an independent crime by the accused, or connects him therewith, even if such evidence is prejudicial, where the other offenses are of the same or like character, and were committed at about the same time. Such evidence is also admissible and competent when it tends to establish a common scheme, plan, system, design, or course of conduct where such other crimes are similar to and closely con-

nected with the one charged, and were committed at about the same time."

The instruction at best is an attempted statement of a rule of evidence. The jury were not told that if they found from the evidence that the other offenses (apparently unrelated) about which evidence had been admitted tended to establish a common scheme plan, system, design or course of conduct and was closely connected with the offense charged that they might consider such evidence as tending to establish a course of criminal conduct related to the offense charged.

The evidence does not disclose any relationship between the killing and skinning of the Bailey heifer or the so-called LE steer. The LE steer was branded with Pollock's brand over another brand. The Bailey heifer was said to be with the Bailey cow. The reason for the killing and skinning of the so-called Bailey heifer was not shown.

PRATT, J., on leave of absence.