STATE, Respondent, *v.* DEEDS, Appellant.
No. 9129.
Submitted January 16, 1952. Decided April 23, 1952.
243 Pac. (2d) 314.

Mr. Jess L. Angstman, Havre, for appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Charles V. Huppe, Mr. H. M. Brickett, Mr. John L. McKeon, Asst. Attys. Gen.,

and Edward J. Ober, Jr., County Atty., Havre, for respondent. for respondent.

Mr. Angstman, Mr. Brickett and Mr. McKeon argued orally.

MR. JUSTICE FREEBOURN:

Raymond L. Deeds, defendant and appellant, was upon trial convicted of nighttime burglary. From the judgment of conviction he appeals.

Two specifications of error are relied upon: (1) That the trial court erred in overruling defendant's motion for a directed verdict of not guilty made after the state's case in chief was in; and (2) that the trial court erred in permitting in evidence over objection a written statement made from an oral examination of defendant after his arrest.

The state's case in chief, as appears from the transcript, shows that Wieber's garage in Havre, Montana, was burglarized on January 29, 1951, between midnight and six o'clock the next morning. At least two men were involved in the burglary.

Deeds had been shop foreman of the garage from May 1949 until November 1950. During such time, and to Deed's knowledge, money was kept in a wooden cash box and in the right-hand upper drawer of the bookkeeper's desk. The custom of keeping money in these two places was discontinued sometime before the burglary. Nevertheless, the burglars broke open the cash box and pried open the upper right-hand drawer of the desk, while other locked drawers in the same desk were not tampered with.

Taken from the garage by the burglars were: A blue four-door Studebaker sedan; an office safe weighing about 400 pounds; a number of new automobile seat covers; and a quantity of car parts. The safe was apparently placed in the rear seat of the Studebaker since the rear seat cushion was left on the garage floor.

On the night of and before the burglary Deeds and one Norby were seen "between eleven and twelve in the evening" in Chinook, about 22 miles from Havre by the Chinook chief of police, Herman Remus. Some five hours later, about "four-thirty in

the morning," according to Remus, whose car was stalled in the snow on a Chinook street, Deeds and Norby in the stolen Studebaker sedan "came on past me and they got stuck in the snowbank." The Studebaker was carrying as he described it, "a real heavy load; * * * it was all piled up in the back seat."

Deeds, after his arrest and when faced by Remus, denied he had been in Chinook as Remus said, although the testimony of sheriff Timmons shows: "Q. Did he deny that he was in Chinook that night? A. Yes. Q. At a later date did he change his story at all? A. Yes."

While in jail Deeds told highway patrolman Broadus, where the stolen Studebaker car and the safe could be found. Following the directions given by Deeds the officers found the stolen property.

Mere possession of property recently stolen during the commission of a burglary does not raise a presumption of guilt as a matter of law. State v. Kinghorn, 109 Mont. 22, 93 Pac. (2d) 964. But it is a strong circumstance indicating guilt. State v. Russell, 93 Mont. 334, 18 Pac. (2d) 611.

Where the charge is burglary, if property taken from the owner is soon thereafter found in possession of the person charged with the felonious entry, proof of this fact, together with circumstances showing guilty conduct, is presumptive evidence, not only of the larceny, but also that he made use of the means by which the property was acquired. Burglary is one degree removed from larceny; but, when the facts proven warrant the finding of the larceny and the surrounding circumstances are such as to show that the larceny could not have been committed without the felonious entry, the evidence is sufficient to warrant the finding of the burglary also. State v. Sparks, 40 Mont. 82, 105 Pac. 87, 135 Am. St. Rep. 608.

The trial court was right in not advising the jury to acquit the defendant at the close of the state's case in chief.

The burglary was committed by two men. One man could not have loaded the 400 pound safe in the rear seat of the Studebaker. Deeds and Norby were together immediately before and

after the burglary. When seen after the burglary they were in possession of the stolen Studebaker sedan. Deeds' denial that he was in Chinook, as Remus said he was, indicated a guilty mind. Deeds was an automobile mechanic, familiar with car parts. A quantity of car parts were stolen. The breaking open of the wooden cash box and the upper right-hand desk drawer, where money was kept when Deeds worked at the garage as shop foreman, although they contained no money at the time of the burglary, is significant, especially when other locked drawers in the same desk were untouched. One unfamiliar with the situation would have opened all the desk drawers. That the officers, following Deeds' directions, found the stolen property, would indicate that Deeds had taken part in concealing it.

The other assignment of error arises from the introduction of evidence by the state, over objection, of an unsigned typewritten statement covering fourteen transcript pages. It purports to be a record made while defendant, under arrest, was being orally examined by county attorney Ober and sheriff Timmons. It is in question and answer form. It was not intended as a confession and was introduced during defendant's cross-examination. It could only be used to impeach defendant. Such method of impeachment was improper. It deprived defendant of a substantial right. This was the right exercised by counsel to object to such question and answers contained in the statement which were collateral, immaterial and prejudicial.

As said in State v. Collett, 118 Mont. 473, 167 Pac. (2d) 584, 586: "The rule is that a witness may not be impeached by contradicting him on collateral matters. State v. McConville, 64 Mont. 302, 209 Pac. 987."

To the same effect is Garrison v. Trowbridge, 119 Mont. 505, 177 Pac. (2d) 464, 467, where we said: "* * * evidence by way of impeachment is not proper on a point not properly in evidence, or on a collateral matter. 70 C. J., pages 1046, 1120; State v. McConville, 64 Mont. 302, 209 Pac. 987; State v. Mott, 72 Mont. 306, 233 Pac. 602."

An example of collateral matter in such statement which was foreign to anything developed on direct examination is: "Q. Did Norby tell you anything about being in the high school? A. No, he didn't. He told me about that deal in Washington last year—he told me it was a Buick. Q. (By Mr. Timmons.) That was a Chevrolet. A. He told me it was a Buick, but he said he was sent up on it—at the time, I recalled I think, he said it was a Buick."

Each question and answer, upon which defendant's impeachment was sought, should have been called to his attention, not lumped together in a statement containing many questions and answers, but separately. After he had read such question and answer, he should have been asked if, at the time and place designated and in the presence of the named witnesses, such question was not asked and if he did not make such answer. See State v. Spotted Hawk, 22 Mont. 33, 55 Pac. 1026; State v. Gaimos, 53 Mont. 118, 162 Pac. 596; Spurgeon v. Imperial Elevator Co., 99 Mont. 432, 43 Pac. (2d) 891.

In this manner the right to object to improper questions and answers would have been preserved to defendant.

The fourteen-page document introduced by the state over the defendant's objection contained a great deal of material that was inadmissible on any theory. It contained collateral matters that could not have been introduced separately. Some of this material was inevitably prejudicial and had it been offered separately should have been refused. Some of the statements were proper impeaching evidence and after a sufficient foundation was laid could have been admitted. But the introduction of the entire document was improper and prejudicial. The defendant was prevented from excluding immaterial and collateral matters that had no place in the trial of this case and was thus prevented from having a fair and impartial trial.

The right to object to improper questions and answers is a substantial right. The right of one on trial for crime to be impeached in the manner prescribed by the law is a substantial right. The denial of such right entitles the defendant to a

new trial. See State v. Shannon, 95 Mont. 280, 26 Pac. (2d) 360.

For the reasons stated the cause is remanded to the lower court with directions to grant defendant a new trial.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES METCALF, BOTTOMLY and ANGSTMAN, concur.