No. 12773

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

RICHARD CLARENCE PEPPERLING,

Defendant and Appellant.

---

Appeal from:  District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

John L. Adams argued, Billings, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Thomas A. Budewitz, Assistant Attorney General,
argued, Helena, Montana
Harold F. Hanser, County Attorney, Billings, Montana
Charles A. Bradley, Deputy County Attorney, argued,
Billings, Montana

---

Submitted:  September 13, 1974

Decided:  OCT 23 1974

Filed:  OCT 23 1974

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

The defendant, Richard Clarence Pepperling, was convicted of the crime of burglary in the first degree and sentenced to a term of fifteen years in the Montana State Prison. From this conviction, the defendant has appealed.

The evidence introduced in this case discloses that on October 19, 1972, sometime between the hours of 10:30 p.m. and 11:00 p.m., the apartment belonging to Mr. and Mrs. William Gross was burglarized. The apartment was entered by someone who had opened the kitchen window while standing on an old car axle and rim that was located beneath the window.

Gross is the owner of the Rimrock Tavern in Billings, Montana. The tavern is located directly in front of his apartment. On the night of the crime, Gross returned to his apartment from the tavern at about 11:00 p.m. and discovered that the mattress in his bedroom had been shoved to one side, his dresser drawer had been opened, and the contents of his bedroom closet had been scattered throughout his bedroom. Gross retired for the night thinking that his wife had caused the disruption.

When Gross arose the following morning, he noticed that his kitchen window had been opened and that a considerable amount of money hidden in the bedroom had been stolen. The money had been located in a dresser drawer and in a clothes hamper that had been placed in the bedroom closet.

During the trial, Gross testified that approximately $9,500 in paper currency, $2,000 in pre-1965 silver coins, and a roll and a half of Indian head pennies had been taken. Included in the paper currency, were sixty or seventy one-hundred dollar bills that were in "real fine condition"--practically uncirculated; at least fifteen fifty dollar bills; and approximately $3,000 in twenty dollar bills. An old fifty-cent piece

with a chip on its corner, making it identifiable, had also been taken. The roll of Indian head pennies also had peculiar dates that Gross could recall.

On October 20, 1972, the day after the crime had been committed, the defendant left the Billings area by bus and traveled to Denver, Las Vegas, and Portland, Oregon where he was arrested for parole violation on October 29, 1972. At the time of his arrest, the defendant was carrying $4,011.83, which included eighteen one-hundred dollar bills, eighteen fifty dollar bills, sixty-five twenty dollar bills, in addition to other bills of smaller denominations. The defendant was also carrying seventy-nine Indian head pennies and three fifty cent pieces, one of which contained a chip on its corner. A watch and a ring were also found.

The appellant was arrested in Portland, Oregon nine days after leaving Billings. He was an immediate suspect when the burglary was discovered and when law officers contacted his parole officer on October 20, it was learned that he had left the state without permission and was therefore in violation of his parole. Law officials in the western states were notified, mug shots were circulated, resulting in an unusually fine job of police work by officers of the Portland, Oregon department. Two policemen in a patrol car were driving down a street on the night of October 29 and one of them looked into a lighted telephone booth where he recognized appellant from a mug shot shown at the department. The two officers went back and questioned appellant as to his identity. He gave a false name, denied he was Pepperling, denied he was wanted and it was not until his identification was made through fingerprints sent to the Federal Bureau of Investigation that he finally admitted his identity. This very denial, under the circumstances,was a factor properly considered by the jury.

During the trial, Gross stated that the old fifty cent piece recovered from the defendant looked familiar because of its chipped corner. He was unable to identify the Indian head pennies from marks or other characteristics, but stated that the dates on the pennies found in defendant's possession corresponded somewhat with the pennies that had been taken from his apartment. Gross had not recorded the serial numbers on the paper currency. Consequently, he could only identify the one-hundred dollar bills from their condition--they were all in very good, almost uncirculated condition.

Mrs. /Gross testified that no one, including her own children, had been informed that the money had been hidden in the bedroom. However, the evidence disclosed that about two weeks prior to the burglary, Mr. Gross had agreed to lend the defendant twenty dollars and had taken him to the apartment to secure the money. While the defendant remained in the dining room, Gross entered the bedroom and took twenty dollars from its hiding place in the closet. The record is barren of any clear testimony that the defendant actually saw Gross remove the money from the closet. However, there is no doubt that the defendant witnessed Gross return from the bedroom with the money.

During the trial, evidence was also brought forth that the defendant had earned approximately $900 in wages during the three months immediately preceding the burglary and had spent approximately $300 of that money for food and lodging.

All of the money found in the defendant's possession at the time of the arrest and the watch and the ring were admitted into evidence over defense counsel's objections.

The defendant has raised three issues in this appeal which will be considered in the order set out below:

1. Was the evidence sufficient to sustain the burglary

- 4 -

conviction?

2. Was the money found in the defendant's possession properly identified as the money taken in the burglary so as to allow its admission into evidence?

3. Did the district court commit reversible error in allowing the watch and the ring to be admitted into evidence?

In relation to the first issue, the defendant argues that the State has failed to prove an essential element in the crime of burglary, namely, that the defendant had made an entry into the burglarized premises.

At the time this crime was committed, section 94-901, R.C.M. 1947, was in effect. This statute reads:

> "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, tent, motor vehicle and aircraft, vessel, or railroad car, with intent to commit grand or petit larceny or any felony, is guilty of burglary."

This Court in State v. Kinghorn, 109 Mont. 22, 93 P.2d 964, held in a burglary case that while mere possession of recently stolen property during the commission of a burglary does not raise a presumption of guilt as a matter of law, where it is accompanied by other incriminating circumstances, and false or unreasonable explanation, it is sufficient to carry the case to the jury and support conviction; in applying the rule that inference of guilt because of possession decreases in proportion to the lapse of time from the taking to its finding, the further rule must be applied that each case must rest largely upon the surrounding circumstances, the matter resting in the discretion of the court.

It is well established in Montana that the mere possession of stolen property, by itself, is insufficient to justify a conviction of burglary. If the State establishes the corpus

delecti of burglary and also proves that the defendant was in exclusive possession of the stolen articles shortly after the burglary had occurred, a permissible inference that the defendant had committed the burglary would arise, even though direct evidence of the entry by the defendant was nonexistent. However, the fact of possession must be corroborated by other incriminating circumstances in order to justify the guilty verdict. State v. Sparks, 40 Mont. 82, 105 P. 87; State v. Gray, 152 Mont. 145, 447 P.2d 475; State v. Kinghorn, supra; State v. Proctor, 153 Mont. 90, 454 P.2d 616; State v. Deeds, 126 Mont. 38, 243 P.2d 314 and 2 Wharton's Criminal Law and Procedure, Section 411 (1957).

Here, the State did not predicate its entire case upon the isolated fact of possession. It went much further to establish the following corroborating facts:

1. The fact that during the three months immediately prior to the burglary, the defendant had only earned $900 and had spent approximately $300 of that money for food and lodging. When the preceding fact is coupled with the fact that the defendant was found to have $4011.83 in his possession at the time of his arrest, another inference of guilt arises. On this point, in 1 Wigmore on Evidence, § 154 (3rd Ed.), it is stated:

> "Another mode, however, of making the fact of money-possession relevant is to show its sudden possession, i.e. to show that before the time of taking the person was without money, while immediately after that time he had a great deal; this reduces the hypotheses to such as involve sudden acquisition, and a dishonest acquisition thus becomes a natural and prominent hypothesis. On such conditions the possession of unidentified money becomes relevant."

2. The fact that the defendant left the Billings area and Montana, in violation of his parole, on the day after the crime had been committed is another corroborating fact.

- 6 -

This Court has stated that " * * * if the jury are satisfied that the crime charged in the information has been committed by someone, then they may take into consideration any testimony showing, or tending to show, flight or concealment by the defendant, in determining whether the defendant is the party guilty of the offense * * *." State v. Paisley, 36 Mont. 237, 252, 92 P. 566. See also: State v. Walker, 148 Mont. 216, 419 P.2d 300 and State v. Bonning, 60 Mont. 362, 199 P. 274.

3. Still another corroborating fact is that the undisputed testimony of both Mr. and Mrs. Gross had revealed that no one had been informed that money had been hidden in the bedroom closet. When the preceding fact is combined with the defendant's knowledge that Gross went to the bedroom to get money to loan him, an inference of knowledge of where the money was located and an inference of guilt when that money was found missing, arises.

In California the defendant's familiarity with the burglarized premises may be considered by the jury in a burglary prosecution. People v. Goodall, 104 C.A.2d 242, 231 P.2d 119; People v. Mercer, 103 C.A.2d 782, 230 P.2d 4; and People v. Bennett, 93 C.A.2d 549, 209 P.2d 417.

Furthermore, the defendant's knowledge as to where the stolen goods were concealed is a material circumstance to be considered in determining guilt. People v. Cooper, 81 C.A.2d 110, 183 P.2d 67.

In reviewing the jury's verdict in a criminal matter when it has been alleged that the evidence is insufficient to support the verdict, the function of this Court is to determine if the verdict is supported by substantial evidence. We will not disturb a verdict based upon substantial evidence. State v. Bouldin, 153 Mont. 276, 456 P.2d 830; State v. Kendrick, 127 Mont. 403, 265 P.2d 201; State v. Curtiss, 114 Mont. 232, 135 P.2d 361.

We hold that the corroborating circumstances are sufficient, when combined with the incriminating fact of possession, to uphold the verdict of the jury.

In relation to the second issue, the defendant argues that the money was insufficiently identified to allow its admission into evidence. We disagree.

In Proctor, a considerable amount of money, including ten rolls of fifty cent pieces had been stolen in a burglary. The coins were identified by the peculiar manner in which they had been rolled. This Court held that a positive identification had been made and cited State v. Wilroy, 150 Mont. 255, 434 P.2d 138, for the proposition that the " * * * lack of positive identification goes to the weight of the evidence, rather than to its admissibility."

In State v. Manger, 7 /.2d 1, 315 P.2d 976, a Utah case, the court held that a positive identification of money had been made since the money found on the defendant and the money stolen corresponded in a fairly close way and there was evidence showing that the defendant did not have a considerable sum of money immediately prior to the burglary. The same situation exists in the present case.

In People v. Chapin, 145 C.A.2d 740, 747, 303 P.2d 365, the California court stated:

> "While, of course, it is impossible to identify currency (unless the numbers are known), the similarity in the size of the bills in the possession of defendant with those of the victim, particularly large bills which generally are not carried, is significant. ' * * * although the fact that defendant used "money of the same kind as that which was recently stolen" ordinarily would constitute but slight evidence of the guilt of defendant, nevertheless, if such money was of a kind "rarely seen in circulation," the weight to be attached to such evidence is considerably increased * * *.'"

In People v. Brumback, 152 C.A.2d 386, 314 P.2d 98, the

California court applied the preceding rationale to the introduction of six one-hundred dollar bills into evidence.

In the present case, the money stolen consisted of several one-hundred dollar bills that were in uncirculated condition, at least fifteen fifty dollar bills, a roll and a half of Indian head pennies, and a fifty cent piece with a chip on its corner, among other paper currency and small change. The money found in the defendant's possession corresponded in a close and peculiar way. Remembering the rule in Wilroy and Proctor that the "lack of positive identification goes to the weight of the evidence rather than to its admissibility", we are satisfied that the money had been properly admitted into evidence.

In relation to the third issue, the defendant argues that the court erred in admitting the watch and the ring into evidence because by so doing, an inference was raised that the items had been stolen. We find no merit in this contention because a receipt showing that they had been purchased in Las Vegas was also admitted into evidence. Consequently, the watch and the ring were not admitted for the purpose of showing that they had been stolen but to show that the defendant's pecuniary condition had changed subsequent to the alleged burglary.

For the foregoing reasons, the judgment of conviction is affirmed.

John Conway Harrison
Justice

We concur:

Chief Justice

Wesley Castles

Frank I. Haswell

Justices

- 9 -