STATE v. SIDDOWAY.

No. 3829.   Decided December 29, 1922.   (211 Pac. 968.)

1.  EMBEZZLEMENT—STATUTES APPLICABLE TO STATE OFFICIAL; "CORPORATION." Comp. Laws 1917, § 8307, relating to embezzlement, does not apply to a state officer, a state not being a public corporation or a corporation of any kind, and section 8235, making it a felony for state officials to appropriate for their own use money in their care, is an additional statute creating another and distinct offense not embraced within the provisions of the general statute.

2. CRIMINAL LAW—NO LIMITATION OF TIME AS TO WHEN ANOTHER OFFENSE IS REMOTE. No exact limitation of time can be fixed as to when another offense tending to prove the intent of the act charged is remote, and the decision of that question depends upon the circumstances of the particular case, and whether evidence is too remote or not is a question whose decision is largely in the sound discretion of the trial court.

3. CRIMINAL LAW—EVIDENCE OF CRIMINAL ACT SUBSEQUENT TO ONE CHARGED ADMISSIBLE TO SHOW INTENT. The mere fact that evidence of other crimes introduced to show intent relates to acts subsequent to the one on which defendant is prosecuted does not make it inadmissible.[1]

4. CRIMINAL LAW—EVIDENCE OF OTHER OFFENSES HELD ADMISSIBLE. In a prosecution of state official for misappropriation of funds paid to him as State Fish and Game Commissioner, evidence of other embezzlements was admissible on the question of intent.

5. CRIMINAL LAW—ADMISSION OF LETTER IN EVIDENCE HELD HARMLESS. Admission in evidence of a letter not signed by defendant, State Fish and Game Commissioner, granting permission to ship beaver hides purchased from the department, was not prejudicial error, since defendant had power to permit the shipping of beaver hides out of the state, and permission to ship from the state was wholly irrelevant; it not being disputed that check received for the hides was not deposited in the department account, but was placed to the credit of defendant personally.

6. EMBEZZLEMENT—EXCLUSION OF EVIDENCE HELD PROPER. In a prosecution of State Fish and Game Commissioner for conversion of funds received in payment of beaver hides, court did not err in excluding evidence that during the time defendant was commissioner a number of beaver furs stored with the department were destroyed by reason of being moth-eaten, as against the contention that the evidence had a direct bearing' upon the question whether defendant intended to keep the money alleged until such time as an accounting could be had with the State Auditor.

7. EMBEZZLEMENT—ERROR IN QUOTING ENTIRE STATUTE IN INSTRUCTION. Where State Fish and Game Commissioner was charged with converting to his own use money received from the sale of beaver furs', court erred in quoting all of the nine subdi-

[1] State v. Seymour, 49 Utah, 292, 163 Pac. 791.

visions of Comp. Laws 1917, § 8235, in its instructions to the jury.[2]

8. CRIMINAL LAW—ERROR IN INSTRUCTIONS HELD NOT PREJUDICIAL. In prosecution of State Fish and Game Commissioner for conversion of money received from the sale of beaver furs by him, error of the court in quoting all of the nine subdivisions of Comp. Laws 1917, § 8235, in its instructions to the jury was not prejudicial.

9. CRIMINAL LAW—INSTRUCTIONS CONSTRUED TOGETHER. Instructions must be considered as a whole in determining whether or not the jury was misled.

10. EMBEZZLEMENT—INSTRUCTIONS HELD SUFFICIENTLY FULL. Instructions to jury in prosecution of State Fish and Game Commissioner for conversion of funds received from sale of beaver hides *held* sufficiently full, and court did not err in refusing to instruct that the prosecution was for misappropriation of public funds, and not for failure to account.

11. CRIMINAL LAW—VERDICT MUST STAND WHEN INSTRUCTIONS AS A WHOLE FAIRLY PRESENT THE LAW. When instructions as a whole fairly present the law, clearly present the issues involved, and contain no harmful or prejudicial error, the verdict in a criminal case must stand.

12. CRIMINAL LAW—TECHNICAL ERRORS DISREGARDED. The statutory provision that technical errors in criminal cases shall be disregarded is mandatory, and, unless upon a review of all the evidence the Supreme Court is satisfied that a miscarriage of justice has resulted, it has no right to interfere with the jury's verdict.[3]

Appeal from the District Court, Third District, Salt Lake County; *L. B. Wight,* Judge.

R. H Siddoway was convicted of unlawfully appropriating to his own use money received by him as State Fish and Game Commissioner, and appeals.

AFFIRMED.

---

[2] *State* v. *Baum*, 47 Utah, 7, 151 Pac. 518.

[3] *State* v. *Nell*, 59 Utah, 68, 202 Pac. 7; *State* v. *Cluff*, 48 Utah, 102, 158 Pac. 701.

*Wilson McCarthy* and *H. C. Allen*, both of Salt Lake City, for appellant.

*Harvey H. Cluff*, Atty Gen., and *W. Hal Farr*, Asst. Atty. Gen., for the State.

WEBER, J.

This is an appeal from a judgment of conviction on an information charging that R. H. Siddoway, at Salt Lake county, state of Utah, on the 11th day of June, 1920, being then and there a public officer, to wit, the duly appointed, qualified, and acting State Fish and Game Commissioner of the state of Utah, and by virtue of his being such State Fish and Game Commissioner, being then and there charged with the duty of receiving and selling the furs of beavers, delivered to him as such State Fish and Game Commissioner, and of depositing the proceeds of such sales in the state fish and game fund, did then and there, wilfully, unlawfully, and feloniously, and without authority of law, appropriate to his own use the sum of $250 lawful money of the United States of America, received by him, the said R. H. Siddoway, as such State Fish and Game Commissioner, for the sale of beaver furs to V. M. Samuels, which beaver furs had theretofore been received by said R. H. Siddoway by virtue of his office as said State Fish and Game Commissioner.

Appellant demurred to this information on the ground that it did not state facts sufficient to constitute a crime. The overruling of the demurrer by the trial court is one of the alleged errors assigned on appeal.

Appellant contends:

"That the information is insufficient for the reason that it fails to state that the defendant failed and refused to account for and pay over the moneys received by him by virtue of his office within the time and in the manner and form required by law."

He concedes:

"That it is competent for the Legislature to make the conversion

of public money a crime without regard to the failure or refusal of the person receiving the same to pay it over to the proper authorities."

And states:

"We think the Legislature has done so by enacting section 8307, Compiled Laws of Utah, 1917."

He contends, however:

"That the Legislature, having by section 8307, made the embezzlement of public money a crime without regard to the question of failure or refusal to account for the same, it was not intended by section 8235 to make a mere conversion of public money, without more, a crime, since so to construe that section would render it a mere repetition of section 8307."

In support of the proposition thus advanced counsel cite *State* v. *Brandt*, 41 Iowa, 600; *State* v. *Parsons*, 54 Iowa, 405, 6 N. W. 579; *Commonwealth* v. *Lewis* (Ky.) 12 S. W. 266; *State* v. *Govan*, 48 Ark. 76, 2 S. W. 347; *State* v. *Hunnicut*, 34 Ark. 562.

In *State* v. *Brandt*, supra, the majority of the court held bad an indictment that charged that defendant, treasurer of the state of Iowa, used and invested as his own money of the State, but did not allege that he failed to account for it. The indictment was drawn under the following statute:

"If any officer within this state charged with the collection, safekeeping, transfer or disbursement of public money, unlawfully converts to his own use in any way whatever or use by way of investment in any kind of property, or loan, without the authority of law, any portion of the public property intrusted to him for collection, safe-keeping, transfer or disbursement, every such act is an embezzlement of so much of said money as is thus taken, converted, invested, used, loaned or unaccounted for, and upon conviction thereof he shall be imprisoned," etc.

Changing by construction the word "or" preceding the words "unaccounted for" to the word "and," the court arrived at the conclusion that the offense punishable under the statute above quoted was the embezzlement of "so much of said money as is thus taken" or converted "and unaccounted for." This construction was approved in *State* v. *Parsons*, supra.

The statute under which the appellant was prosecuted

certainly does not admit of the construction placed upon the Iowa statute. The Utah statute is plain, explicit, and unambiguous, and can by no feat of linguistic legerdemain be construed into even a resemblance of the part of the Iowa statute upon which rests the decision in the Brandt Case. The Utah statute (section 8235, Comp. Laws Utah 1917) reads:

"Every officer of this state, or of any county, city, town, precinct, or district of this state, and every other person charged with the receipt, safe keeping, transfer, or disbursement of public money, who either:

"1. Without authority of law appropriates the same or any portion thereof to his own use, or to the use of another; or,

"2. Loans the same or any portion thereof without authority of law; or,

"3. Fails to keep the same in his possession until disbursed or paid out by authority of law; or,

"4. Unlawfully deposits the same or any portion thereof in any bank, or with any banker or other person; or,

"5. Knowingly keeps any false account, or makes any false entry or erasure in any account of or relating to the same; or,

"6. Fraudulently alters, falsifies, conceals, destroys, or obliterates any such account; or,

"7. Willfully refuses or omits to pay over, on demand, any public moneys in his hands, upon the presentation of a draft, order, or warrant drawn upon such moneys by competent authority; or,

"8. Willfully omits to transfer the same, when such transfer is required by law; or,

"9. Willfully omits or refuses to pay over, to any officer or person authorized by law to receive the same, any money received by him under any duty imposed by law so to pay over the same,— is guilty of a felony."

Neither are the Arkansas cases cited by appellant of any persuasive force. Like the Iowa cases they are based upon a statute different from that of this state.

Section 8307, Comp. Laws Utah 1917, to which counsel for appellant refer as being the only one under which defendant is prosecutable, is part of chapter 46 of the Penal Code devoted to embezzlement. Section 8306 is a general definition of embezzlement. Section 8307 provides:

"Every officer, director, trustee, clerk, servant, or agent of any association, society, or corporation, public or private, who fraudulently appropriates, to any use or purpose not in the due and lawful

execution of his trust, any property which he has in his possession or under his control by virtue of his trust, or secretes the same, with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement."

The above section does not apply to a state officer, a state not being a public corporation or a corporation of any kind. *State* v. *Taylor*, 7 S. D. 533, 64 N. W. 548.

Embezzlement being wholly a crime of statutory creation, and none of the provisions of chapter 46 making embezzlement of public funds by public officers a crime, chapter 39 with the title of "Crimes Against Public Property," was enacted. In order to better protect public funds the penalty was made more drastic than that provided in the general embezzlement statute. Instead of being a repeal by implication of the other statute, the law making it a felony for state officials to appropriate to their own use money in their care is an additional statute creating another and distinct offense not embraced within the provisions of the general statute on the subject of embezzlement. While we do not think the offense for which appellant was prosecuted was covered by section 8307, supra, we are in accord with the opinion in *Bork* v. *People,* 91 N. Y. 5, in which it is said:

"It was certainly competent for the Legislature to provide, by an independent statute, that certain acts of embezzlement, punishable by the existing statutes, should constitute a distinct offense, and affix a severer punishment than was provided by the general law relating to that class of offenses."

It is argued that certain exhibits purporting to be checks received by defendant in payment of beaver furs were inadmissible. While conceding that in a prosecution for embezzlement evidence tending to prove other similar offenses for the purpose of showing intent is admissible, appellant's counsel insist that the transactions which these exhibits tended to prove were too remote in time and not sufficiently connected with the transactions relied upon to be any proof of intent. Our attention is called to *Bismark* v. *State,* 45 Tex. Cr. R. 54, 73 S. W. 965, which supports appellant's argument. The Bismark Case was a prosecution for receiving

stolen property. The indictment alleged and the proof showed that the offense charged was committed on the 1st of July. Subsequent offenses committed by defendant on the 10th and 18th of the same month were held inadmissible as too remote. The court also seems to accord some weight to the fact that the two offenses, proof of which it held inadmissible, were subsequent to the crime charged. So far as we have examined the authorities the Texas case stands alone. To us it is not persuasive. No exact limitation of time can be fixed as to when another offense tending to prove the intent of the act charged is remote. The decision of that question must depend upon the cir-    2, 3 cumstances of the particular case, and whether evidence is too remote or not is a question whose decision is largely in the sound discretion of the trial court. The mere fact that the evidence relates to acts subsequent to the one on which a defendant is prosecuted does not make it inadmissible. In *State* v. *Seymour*, 49 Utah, at page 292, 163 Pac. at page 791, this court quotes with approval from 19 Cyc. 443, as follows:

"Evidence of similar false pretenses made by defendant to the same person for the purpose of obtaining property, or to others shortly before or after the representations for which defendant is on trial, is, in most jurisdictions, held admissible to prove either defendant's knowledge of their falsity or a guilty intent, or both. * * *"

The question then arises as to what is meant by "shortly before or after" the transaction. In the language used in *Schultz* v. *United States*, 200 Fed. 234, at page 237, 118 C. C. A. 420, at page 423:

"This is a matter almost wholly confided to the discretion of the trial court. In *Packer* v. *United States*, 106 Fed. 906, 46 C. C. A. 35, it was held that transactions a year prior to the one in question might be received in the discretion of the trial court."

On the question as to whether evidence of the conduct of a defendant after the commission of the alleged offense is admissible, the court, in *Schultz* v. *United States*, supra, quotes from *United States* v. *Doebler*, Baldw. 519, Fed. Cas. No. 14,977; *United States* v. *Snyder* (C. C.) 14 Fed.

554; *Withaup* v. *United States,* 127 Fed. 530, 62 C. C. A. 328; and other cases. In the course of the opinion it is said:

"Bearing in mind that the authorities state that the rule upon this subject is alike in civil and criminal cases, attention is called to *Exchange Bank* v. *Moss,* decided by this court in 149 Fed. 340, 79 C. C. A. 278, when Judge Hook said: 'In the application of the rule there is no distinction between those acts that were committed before and those that were committed after the one involved in the case on trial. The latter may be as significant of the intent of the defendant in the particular case as the former, and that is the quality which justifies the admission of the evidence. It is sometimes said that the collateral instances, evidence of which is admissible, are those that occurred at or about the time of the one in question, yet in practice the proximity in point of time is largely left to the discretion of the trial court. The same is true of the degree of similarity. There are cases in which such evidence was held admissible, though it related to acts preceding the one in question by several years."

The probative or evidentiary value of other offenses may be weakened by remoteness in time, but, as said by Judge Taft in *Penn Mutual Life Ins. Co.* v. *Mechanics' Savings Bank & Trust Co.,* 72 Fed. 413, 19 C. C. A. 286, 38 L. R. A. 33, 70, it "will not ordinarily justify exclusion." So in the instant case the evidence of other embezzlements was admissible, its probative value being for the jury's determination.

It is urged by appellant that the admission in evidence of a letter purporting to be addressed to J. Soble, granting permission to him to ship out of the state beaver hides purchased from the State Fish and Game Department, was harmful and prejudicial error. This letter was not signed by appellant. There was no evidence tending to show that appellant wrote the letter or that he authorized any one to write it. The contention is that it was clearly hearsay and inadmissible on any theory. Appellant's objection to the admission of this letter should have been sustained. That permission to ship out of the state was given was wholly irrelevant, but it could not possibly be harmful. The defendant had the right to give that permission. That the beaver hides were purchased and paid for by Soble had been testified to by him, and was not disputed. Nor

was it disputed that Soble's check was not deposited in the Fish and Game Department account, and that it was placed to the credit of appellant personally. Under these circumstances the error was not harmful.

The testimony of John H. Cook, then custodian of the state capitol, was offered to prove that during the time appellant was State Fish and Game Commissioner between 90 and 100 beaver furs stored with the Fish and Game Department during appellant's term of office were destroyed by reason of being moth-eaten. It is insisted that this testimony had a direct bearing upon the question whether appellant intended to keep the money alleged to have been received by him for the sale of beaver furs until such time as an accounting could be had with the State Auditor. This is the argument of counsel:

"The statute prescribing the duties of the State Fish and Game Commissioner expressly provides that all beaver skins must be delivered to the State Fish and Game Commissioner and must be sold by him. It is the further duty of the Commissioner to deposit the proceeds of the sales in the state fish and game fund and remit one-half thereof to the trapper. It is quite clear, therefore, that the Commissioner must account for all furs delivered to him. If, then, some of those beaver skins became unsalable, and had to be destroyed, the Commissioner would be accountable unless the furs were rendered unsalable through no fault of his own. In view of this situation the Commissioner might feel that to protect himself he should retain the proceeds of sale until a full accounting with the State Auditor could be had."

These furs had been paid for out of state funds. All the appellant had to do to obtain credit for them was to show that they had become moth-eaten, and were for that reason destroyed. On what theory could these facts tend to prove that appellant withheld funds received by him from sale of beaver hides till a full accounting could be had? In our opinion the court committed no error in excluding this testimony.

Another ground relied on by appellant for reversal relates to certain instructions to the jury. As shown by the information, the charging part of which is set out above, the defendant was charged with converting to his own use

$250 received from the sale of beaver furs to V. M. Samuels in June, 1920. Instead of confining the instructions to the specific offense referred to in the information, the court, in one of the instructions, read to the jury the whole of section 8235, which we have hereinbefore quoted in full. There was no good reason for quoting the nine subdivisions of the section, and doing so was clearly erroneous. In *State* v. *Baum*, 47 Utah, 7, 151 Pac. 518, it is said:

"Complaint is also made of this charge: 'All persons concerned in the commission of a crime, whether it be a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, are principals in any crime so committed.' Such a charge may be proper enough in a proper case; but the court had no such case before it. There were neither pleadings nor evidence to render such a charge pertinent. What the state charged was that the defendant directly entered the building and took the goods therefrom; and what it claimed by its evidence was that he, with two others, directly entered and took the goods—directly committed the offense. There was no evidence to show, and no one claimed, that the defendant but aided or abetted in the commission of the offense, or, not being present, advised or encouraged its commission. There, hence, was no occasion to give that kind of a charge. Under the circumstances, we think it was misleading and harmful."

It does not follow, however, that because this kind of an instruction was held prejudicial in *State* v. *Baum* it is harmful in this case. Baum was charged with burglary. Two accomplices testified that the defendant with them had committed the crime charged. No corroborating evidence sufficient to connect Baum with the offense charged was produced. All the testimony, in addition to that of the accomplices, was that of the sheriff, to whom the defendant made a statement indicating guilty knowledge. It is obvious that the court's charge on the subject of aiding and abetting in the commission of the offense was harmful, and probably influenced the jury in finding the verdict of guilty. No such state of facts is presented here. Reading the facts as detailed in the Baum Case, one cannot account for the verdict on any theory except that the jurors were misled,

while, considering the facts in the case at bar, one cannot conceive how, under the evidence, the jury **8** could have returned any other verdict than that of guilty. That the $250 paid by Samuels for beaver hides was appropriated and retained by appellant is uncontradicted; that at other times he sold beaver hides and converted the money to his own use is undisputed. In defense it was shown that on June 3, 1921, after an audit was made by the State Auditor, and within the time of the demand made by said Auditor for such sum, the appellant paid the sum of $4,477.83 to the State Fish and Game Department. Then evidence of appellant's previous good reputation and good character for honesty and integrity was presented. And that was all. It is apparent that the Baum Case can be of no avail to appellant.

With the exception of testimony relating to other offenses of the same kind committed by defendant admitted as bearing upon intent, all the evidence against appellant was confined to the one charge of appropriating to his own use the $250 paid him as Fish and Game Commissioner by Samuels, and in the instruction following the one complained of the court told the jury that—

"Before you can find the defendant guilty of the crime charged in the information you must find from the evidence beyond a reasonable doubt (a) that the defendant R. H. Siddoway was, on or about the 11th day of June, 1920, the duly appointed, qualified, and acting Fish and Game Commissioner of the state of Utah, and as such came into the possession of the sum of $250 by the sale of beaver furs to one V. M. Samuels; (b) that the defendant willfully, unlawfully and feloniously appropriated the said sum of $250 to his own use; (c) that said offense occurred at Salt Lake county, state of Utah. It is not enough that one or any part of these elements be proved short of all of them, but it is necessary, in order to justify a verdict of guilty in this case, that each and every one of said elements must be proved to your satisfaction beyond a reasonable doubt."

Other instructions conveyed the same thought confining the charge to the conversion of the $250 as charged in the information. The Samuels transaction specifically charged in the information is repeatedly mentioned in other instruc-

tions, thus necessarily concentrating the minds of the jurors on the one question whether defendant fraudulently converted to his own use this particular money—the $250 received from Samuels. Instructions must be considered as a whole, and so the court informed the jury. Taking the instructions together, no good reason occurs to **9, 10** us for believing that jurors endowed with common sense and average intelligence could misunderstand, misconstrue, or misapply them.

After several hours' deliberation, the jury returned into court and submitted the following questions in writing, which were answered by the court as herein indicated:

"Question No. 1. How much time, according to law, did Mr. Siddoway have to hold collected money as State Fish and Game Commissioner?"

In answer to this question the court gave an additional instruction numbered 1, as follows:

"It is provided by the statutes of this state that furs of beaver (and other animals) must be delivered to the State Fish and Game Commissioner to be sold by him and the proceeds shall be deposited in the fish and game fund, and it is further provided that all moneys paid into this fund shall be covered into the state treasury."

"Question No. 2. Did he have one month, three months, six months, or was there any stipulated time in which to turn the money into the state treasury by law?"

In answer to this question the court by special instruction No. 2 told the jury:

"No special reference is made in the statute as to moneys received from the sale of beaver hides."

"Question No. 3. Did Mr. Siddoway have any stipulated time according to law in which to make a full accounting after his term of office expired?"

This was answered by the court in additional instruction No. 3, "No."

The court, in addition to the above, gave the following additional instruction numbered 4:

"You are instructed that the statutes of the state of Utah provide that the fees chargeable and collected by state officers for the use and benefit of the state shall be paid to the State Treasurer at the end of each quarter."

Also the following additional instruction numbered 5:

"You are instructed that you must consider these instructions given you in connection with all of the other instructions given to you by the court, and in connection with all of the evidence offered in this cause. You cannot consider these instructions alone by themselves without taking into account other instructions of the court and the evidence in this case."

Counsel for appellant say:

"There can be no question in the mind of any reasonable person but that the jurors had in mind subsections 3, 7, 8, and 9 of the section quoted to them, and that their deliberations were not confined to the question of whether or not the defendant had violated subsection 1 as charged in the information. It is doubtful if there can be found in all the books a more striking illustration of a jury being misled by instructions which go beyond the issues presented. By the instructions complained of the jurors were given a roving commission authorizing them to find the defendant guilty of any one of nine distinct crimes."

As we view the questions propounded by the jury, they indicated that the jurors, or some of them, were groping for and seeking a means of escaping a verdict of guilty, and not that the minds of the jurors were muddled or befuddled.

At the time the special instructions were given in answer to the jury's questions, appellant requested the court to instruct the jury:

"You are instructed in this case that the defendant is not charged by this information of failing to account for moneys received by him as State Fish and Game Commissioner of the state of Utah within the time required by law, or at all, but he is charged with the crime of misappropriating public funds with the intent of converting the same to his own use, and depriving the state of Utah thereof, as stated in the instructions heretofore given defining the charge set forth in the information herein filed."

The requested instruction might have been given with propriety, and, had the information by it conveyed not been substantially embodied in other instructions, we would hold the refusal to give this request both erroneous and harmful. When instructions as a whole fairly present the law, clearly present the issues involved, and contain no harmful or prejudicial errors, the verdict in a criminal case must stand. The statute that provides that

technical errors in criminal cases shall be disregarded is mandatory, and, unless upon a review of all the evidence we are satisfied that a miscarriage of justice has resulted, we have no right to interfere with the jury's verdict. *State v. Nell*, 59 Utah, 68, 202 Pac. 7; *State v. Cluff*, 48 Utah, 102, 158 Pac. 701.

A careful consideration of all the evidence compels the conclusion that the result in this case could not have been otherwise, regardless of the errors assigned. While ably and skillfully presented by counsel, the defense has been wholly technical. When the evidence of a defendant's guilt is conclusive, refined technicalties must be disregarded.

We are therefore constrained to affirm the judgment of conviction.

CORFMAN, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.