## STATE v. EVANS.

No. 6670. Decided August 31, 1944. (151 P. 2d 196.)

See 23 C. J. S. Criminal Law, Sec. 1321. 3 Am. Jur., 623.

*Harley W. Gustin,* of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., and *Arthur H. Nielsen,* Asst. Atty. Gen., for respondent.

Hoyt, District Judge.

This is an appeal from a conviction of grand larceny. Defendant was tried the second time before a jury in the District Court of Salt Lake County, and in the verdict of guilty returned, the jury recommended leniency. On a previous occasion the jury was unable to agree, resulting in a mistrial.

Appellant, in the evening of July 20, 1943, was hired as a fry cook at Nelson's Cafe on south State Street in Salt Lake City. The cafe was owned by Mabel I. Nelson and her son Frederick, the latter being in the armed forces, and was under the actual and complete management of J. H. Anderson, Mrs. Nelson's brother. The terms of the employment were that appellant should work the night shift from 9:00 o'clock in the evening until 6:00 the next morning, at a wage of $7 a shift. The cafe was open to the public twenty-four hours a day except Mondays and on Saturday mornings from 6:00 o'clock until noon to afford opportunity to stock up for the Saturday night and Sunday business. Appellant worked the night shifts of July 20, 21, 22 and 23, 1943, the latter being a Friday night. He was advised by Anderson that evening of the custom of closing Saturday mornings and was told that he could close the cafe at about 5:30 Saturday morning and see that the waitresses cleaned the place up, filled the sugar bowls, salt and pepper shakers and napkin holders. There were two

regular waitresses and a dishwasher on duty that night and because of a rush of business, defendant hired two extra waitresses. It is made to appear that at about 2:30 Saturday morning, defendant ordered one of the waitresses to lock the cafe. There were several customers in the cafe at the time, who left from time to time as they finished their meals. After the girls had cleaned the place somewhat the two regular waitresses and one of the extras left the premises. At this time there were three men customers left at the counter and the other extra waitress was asleep at the table in one of the booths. The men left the cafe and about twenty minutes to 6:00 the defendant left, telling the dishwasher to let the girl out when she awoke. Shortly after that the defendant returned to the premises to get his working clothes and again left immediately, the girl waitress having left the premises during his absence. The dishwasher was the only person on the premises at the time J. H. Anderson, the manager, arrived at a few minutes before 6:00 o'clock. All the money in the cash register, all the change kept in a box under the work table and all the candy board money usually kept in a box under the counter was gone. It was testified that there was $93.05 in the cash register at 9:00 o'clock Friday evening when the register was checked, and when it was again checked at 7:30 the following morning the tape showed that $76.01 had been taken in during the night. The same witness testified that there was $17.75 in the candy board box and $40 in the change box. The total of this amount, or $226.81, is the money defendant is charged with having stolen during the night in question.

After leaving the restaurant, defendant went to his hotel, paid his bill, checked out and left for Ogden by the Bamberger Railway, checking in a room at the Healey Hotel in Ogden, Utah, at about 1:30 Saturday afternoon and leaving by train that evening for Iola, Kansas, where his wife was and where he was later arrested.

There is no direct evidence establishing the larceny by the defendant. No one saw him take the money. The case is based wholly on circumstanial evidence. A motion for a

directed verdict and a subsequent motion for a new trial were both denied.

Appellant assigns as errors the trial court's refusal to give a requested instruction on the subject of "flight," the giving of Instruction No. 7 on the subject of principal and accessory, the court's denial of his motions for a directed verdict and for a new trial, and contends for a reversal on the ground that the evidence is insufficient to support the verdict.

The instruction on the subject of flight requested by appellant, and which the trial court refused to give, is in the following language:

"You are instructed that the testimony to the effect that the defendant left Salt Lake City on the morning of July 24th and went to Iola, Kansas, where he joined his wife, has no legal significance in determining the guilt or innocense of the accused."

As so worded, the instruction is improper and does not state the law. Appellant contends, however, that in view of a requested instruction on the subject, although not a proper one, the court should have given an instruction on the subject, inasmuch as the trial court is bound to instruct on the general law of the case, and that it was error to fail to do so. Circumstances surrounding the flight of an accused are collateral to the main issue. *State* v. *Conrad*, 322 Mo. 246, 14 S. W. 2d 608; *State* v. *Brown*, Mo. Sup., 62 S. W. 2d 426. The lower court gave a very comprehensive instruction on circumstantial evidence, which we quote:

"Instruction No. 8. You are instructed that evidence is of two kinds, direct and circumstantial. Direct evidence is when a witness testifies directly of his own knowledge of facts to be proven in the case. Circumstantial evidence is proof of certain facts and circumstances in a case from which the jury may infer other and connected facts, which usually and reasonably follow, according to the common experience of mankind. Circumstantial evidence in criminal cases is competent and so far as its nature is concerned is of the same force and effect as any other evidence, provided the facts and circumstances when taken altogether are of such a character as to satisfy the minds of the jury

beyond a reasonable doubt that the defendant is guilty. Circumstantial evidence is the proof of such facts and circumstances connected with or surrounding the perpetration of the crime charged as to tend to show the guilt or innocence of the person accused; and if these facts and circumstances when considered altogether are sufficient to satisfy the minds of the jury of the guilt of the defendant beyond a reasonable doubt, then such evidence is sufficient to authorize a conviction. But if such facts and circumstances when considered together are explainable upon any other reasonable hypothesis than that the defendant is guilty, then such evidence will not warrant a verdict of guilty."

What appear to be the better and modern rules governing evidence of flight, or escape or disguise, are concisely stated in *Hickory* v. *United States*, 160 U. S. 408, 16 S. Ct. 327, 332, 40 L. Ed. 474, where it is said, quoting from Best on Presumptions, p. 323:

" 'In modern times more correct views have prevailed, and the evasion of or flight from justice seems now nearly reduced to its true place in the administration of the criminal law, namely, that of a circumstance,—a fact which it is always of importance to take into consideration, and, combined with others may afford strong evidence of guilt, but which, like any other piece of presumptive evidence, it is equally absurd and dangerous to invest with infallibility.' And this is quoted with approval in Burrill, Circ. Ev. p. 473. See, also, Rosc. Cr. Ev. (8th Am. Ed.) p. 30. Mr. Wharton, in his Criminal Evidence, after referring in a note to the American authorities, states the rule in accordance with the foregoing, and concludes: 'The question, it cannot be too often repeated, is simply one of inductive probable reasoning from certain established facts. All the courts can do when such inference is invoked is to say that escape, disguise, and similar acts afford, in connection with other proof, the basis from which guilt may be inferred, but this should be qualified by a general statement of the contervailing conditions, incidental to a comprehensive view of the question.' "

We believe the trial court's instruction No. 8 was sufficient under the facts and circumstances in this case and that it was not error, certainly not prejudicial error, to fail to single out and give a specific instruction on the question of defendant's departure from Salt Lake City to Iola, Kansas, early in the morning following the commission of the

6

alleged crime. In fact, it is our belief that for the court to have done so on its own motion would be subject to the complaint of unnecessarily emphasizing this phase of the evidence in view of the court's instruction on circumstantial evidence. See *Jenkins* v. *Commonwealth*, 132 Va. 692, 111 S. E. 101, and extensive annotations following the decision in 25 A. L. R. 882, at page 886.

Appellant's next asignment is that the court erred in giving its instruction No. 7, which is as follows:

"You are instructed that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid or abet in its commission are principals in any crime so committed."

It is asserted that this was an abstract statement of law, not related to the issues and that the propriety of the instruction is not even remotely suggested by the evidence. Counsel further contend that the only plausible theory upon which the court could have given this instruction was that the court anticipated the argument of counsel to the effect that there were other persons in the cafe who had equal access to the money taken and that the jury therefore could not believe beyond a reasonable doubt that defendant had taken it. Defendant cites the case of *State* v. *Baum*, 47 Utah 7, 151 P. 518, 519, in which the giving of an instruction in identical language was held to be "misleading and harmful."

In the Baum case it was found that there was no sufficient evidence to corroborate the testimony of alleged accomplices of the defendant, on whose testimony the conviction was based. It was also found that a new trial should be ordered because of misconduct of the prosecuting attorney. The facts in that case are clearly not parallel with the facts in this case. Here there was ample competent evidence to justify the jury in believing that the defendant took the money in question.

The court gave the following instructions to the jury, viz.: That the defendant Morgan P. Evans was charged with the crime of grand larceny committed as follows, that said Mor-

gan P. Evans on the 24th day of July, 1943, at the county of Salt Lake, State of Utah, stole from Mabel I. Nelson and Frederick Antone Nelson, doing business as Nelson's Cafe, $227.81; that before the jury could find the defendant guilty of grand larceny as charged in the information the state must prove to its satisfaction and beyond a reasonable doubt that at the time and place alleged the defendant wilfully, unlawfully and feloniously took and carried away from Nelson's Cafe money in excess of $50; that said money was the property of Mabel I. Nelson and Frederick Antone Nelson; that said taking was with the intention on the part of the defendant of converting said money to his own use or to the use of someone other than the true owner; that such acts were done without the consent of Nelsons; that it was necessary in order to justify a verdict of guilty that each and every one of the allegations in the information hereinabove enumerated be proved to the satisfaction of the entire jury and beyond a reasonable doubt; that to warrant the jury in convicting the defendant the evidence must to their minds exclude every reasonable hypothesis other than the guilt of the defendant.

In view of these instructions it seems reasonably certain that the jurors believed that the defendant himself took the money. There was ample evidence to justify such a belief.

In the case of *State* v. *Siddoway,* 61 Utah 189, 211 P. 968, 972, the defendant was convicted of unlawfully apropriating to his own use money received by him as state fish and game commissioner. The trial court, in its charge to the jury, instead of confining its instructions to the specific offense referred to in the information, read to the jury the whole of Section 8235, C. L. U. 1917, which declares several acts unlawful other than that with which defendant was accused. This court said: "There was no good reason for quoting the nine subdivisions of the section, and doing so was clearly erroneous." The court then discussed the Baum case and said: "It does not follow, however, that because this kind of an instruction was held prejudicial in *State* v. *Baum* it is harmful in this case." The court next pointed

out that the trial judge specifically instructed the jury that before it could bring in a verdict of guilty it must find beyond a reasonable doubt that at the time and place mentioned in the information the defendant came into possession of the $250 referred to in the information by the sale of beaver furs to one V. M. Samuels and that he wilfully, unlawfully and feloniously appropriated said sum to his own use. Continuing the court said: "Instructions must be considered as a whole, and so the court informed the jury. Taking the instructions together, no good reason occurs to us for believing that jurors endowed with common sense and average intelligence could misunderstand, misconstrue, or misapply them."

The latter statement appears to be applicable to this case. We agree with counsel for defendant that abstract propositions of law, not applicable to the issues in a case, should not be given as instructions to a jury. But we do not believe that the instruction complained of here when considered with the other instructions and the evidence in the case could have confused or misled the jury.

The remaining assignments have been disposed of by what we have hereinabove said. The judgment is affirmed.

We concur.

LARSON, and McDONOUGH, JJ., concur.

WADE, J., also concurs in the views expressed by Mr. Chief Justice WOLFE in his concurring opinion.

WOLFE, Chief Justice (concurring especially).

I definitely think that the giving of instruction No. 7 was error. I think there must be some evidence from which the jury could infer that the defendant might in this case not have himself taken the money but that he aided and abetted in its taking. I find no such evidence. Surely the mere accessibility of the money to others besides the defendant is not evidence from which it could be inferred that defendant procured one or all of those others to take

the money or that they induced him to take it. Such would be not even a conjecture but a wild guess founded only on the fact that they had accessibility to the money. Were it not for the fact that defendant left without asking for his pay and left his hotel, staying in Ogden until his train left on Saturday afternoon—rather powerful circumstances taken in connection with his accessibility to the money—there would not be sufficient evidence to convict him. This conduct on his part singles him out from all the rest as the guilty party. There is no evidence that he got someone to aid him or that some other got him to aid. Therefore, I think instruction No. 7 erroneous.

A more difficult question is: Was it prejudicial? I am not one to conjure up every imaginable mental process that a juror may be subject to in order to hold that an abstract instruction is prejudicial. I think we must presume reasonableness in jurymen and assume that their minds work along commonsense and reasonable lines. Certainly where abstract instructions, not applicable to any facts in evidence, are given and no reasonable mind would be invited by such instruction to be misled it would not be prejudicial. I cannot see how any reasonable mind would, if it had a reasonable doubt as to defendant's guilt, have then come to the conclusion that there must have been evidence of some one aiding him and that this dispelled the reasonable doubt. The jurors must, of necessity, have ignored an instruction which, if it aroused inquiry as to whether there was some one aiding and abetting, must have resulted in finding no such evidence. The conclusion is therefore that the jurors came to their decision that defendant was guilty beyond a reasonable doubt purely from the evidence of the taking plus his accessibility plus his conduct on the morning when he left without calling for his wages.

MOFFAT, J., deceased.