The STATE of Utah, Plaintiff and Respondent,

v.

Joseph ANSELMO, Defendant and Appellant.

No. 14578.

Supreme Court of Utah.

Jan. 4, 1977.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for defendant and appellant.

Bruce C. Lubeck, Salt Lake City, for plaintiff and respondent.

ELLETT, Justice:

The defendant was convicted and duly sentenced for the crimes of kidnapping and aggravated sexual assault. He has appealed, claiming the court erred in three particulars, viz.

(1) In failing to reduce the charge of aggravated sexual assault to the included offense of simple rape.

(2) In failing to give defendant's proposed instruction dealing with the amount of force and the nature of resistance required in a rape case, and

(3) In giving an instruction which was not supported by the evidence in the case.

The facts of the case as established by competent, believable evidence show that the victim in this case was called by a woman acquaintance to meet her at a downtown restaurant; and thereafter, they went to the defendant's apartment where defendant solicited the victim to be his "old lady." [1] The victim declined, whereupon the defendant told her to go as "his friend" with a group of people there present to the home of some acquaintances of his where there would be a birthday party in honor of the woman who had invited the victim to the downtown restaurant.

Upon arriving at the home of the people giving the party, the defendant forgot his role as "friend" and demanded that the victim be his "old lady" once more. Upon her refusal, he struck her in the face with his fist so as to severely blacken both eyes. He followed her into the bathroom where he again hit her with his fists. Other violence was perpetrated upon her, including placing his hands upon her throat and drawing back his fists in a manner indicating he would again hit her in the face. She was forcibly placed upon the bed where she was raped. Her clothes were taken from her and she was detained from that time

(past midnight Thursday) until she managed her escape late Monday afternoon. She was forced to sleep with the defendant and was repeatedly raped by him.

It seems that the entire group in whose company the victim found herself were weird people who apparently could see no harm in aiding the defendant to secure an "old lady" by force and violence.

Once the defendant told the victim that if she did not shut up and submit, he would have "his man take care of her." When she inquired as to the meaning of his words, the tenant of the house violently slammed a hammer into the wall of the room and said, "That is what he means."

The defendant was five feet, nine inches tall and weighed over two hundred pounds, and all the group seemed afraid of him.

The victim was compelled to remove her bra, and it, including those of other women present, was burned before the group in some sort of ritual. Finally, the woman of the house permitted the victim to dress in another woman's clothes and while the defendant slept, secretly obtained the shoes and coat of the victim and then unlocked the chain on the back door, permitting the victim to escape. Fearing for her own safety, the woman then went to bed and feigned sleep. Her story was that she must have left the door unlocked after taking out some garbage and thus, the victim was enabled to escape while the woman slept.

When the defendant awoke and found the victim had escaped, he became greatly alarmed and left the State without returning to his own apartment and without picking up his money for time worked since his last payday.

The defendant admits having sexual intercourse four times with the victim but claims that it was no more than rape and that the evidence does not support the charge of aggravated sexual assault. The crime of aggravated sexual assault is defined by statute to be:

In the course of a rape . . . . :

---

1. One who would submit to his sexual desires.

(i) The actor causes serious bodily injury to the victim; or

(ii) The actor compels submission to the rape . . . by threat of kidnaping, death, or serious bodily injury to be inflicted imminently on any person. . .[2]

 Not only was serious bodily injury inflicted upon the victim, but she was also held in captivity for four days. The defendant said it was to enable her half-shut, swollen black and blue eyes to lose their color so that her father and brother would not be "on her back."

The evidence is ample to allow the jury to find the defendant guilty of aggravated sexual assault as charged in the information.

The court instructed the jury on that crime and included the following element:

(2) That (name of victim) was compelled to submit to the rape by Joseph Anselmo by a threat of kidnapping, death, or serious bodily injury to be inflicted imminently upon her.

While the defendant did not actually state his intent to kill or seriously injure the victim, or to kidnap her, such an oral statement is not necessary to constitute a threat when by acts and conduct, the threat is not only made manifest, but more especially is this so when the kidnapping and great bodily harm are both being perpetrated at the time.

The court properly instructed the jury based on the evidence before it and did not err in failing to give the instruction proposed by the defendant.

As to the third claim of error, it is evident that the court instructed in the language of the statute,[3] as follows:

(3) The victim has not consented and the actor knows the victim is unconscious, unaware that the act is occurring, or physically unable to resist;

Ordinarily it is error to instruct on abstract principles of law that are not applicable to the facts before the jury, and we think it was improper to include subsection (3) in the instruction given in this case. However, since there was absolutely no way the jury could have related the instruction to the verdict, it was harmless error.[4]

As long as there is substantial, credible evidence to support the verdict; and where there is no reversible error of law in the case, we do not reverse.[5] Here, the defendant had a fair trial; he called his witnesses and gave his version of the affair. The trouble is the jury did not believe his story and a reading of the record shows why that is so.

The judgment is affirmed.

HENRIOD, C. J., and CROCKETT, MAUGHAN and WILKINS, JJ., concur.

**2.** 76–5–405(a), U.C.A.1953, 1975 Pocket Supp.

**3.** 76–5–406(3), U.C.A.1953, 1975 Pocket Supp.

**4.** *State v. Siddoway,* 61 Utah 189, 211 P. 968 (1922).

**5.** Sec. 77–42–1, U.C.A.1953; *State v. Condit,* 101 Utah 558, 125 P.2d 801 (1942).