The STATE of Utah, Plaintiff
and Respondent,

v.

Victor George FONTANA, Defendant
and Appellant.

No. 17796.

Supreme Court of Utah.

March 2, 1984.

G. Fred Metos, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Robert N. Parrish, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

OAKS, Justice:

Robert M. Baxter was killed instantly by a .357 Magnum bullet that entered his head just ahead of his left ear as he sat in his car waiting for a traffic light. A jury convicted defendant of second degree murder in Baxter's death. The sole issue on this appeal is the validity of the jury instruction defining the variation of second degree murder involving "depraved indifference to human life." That issue requires a review of the evidence at the trial.

Defendant, an experienced marksman, admitted firing the shot that killed Baxter, but insisted that it was an accident. He testified that he was sitting in his pickup truck at the intersection "dry-firing" his .357 Magnum pistol, which he believed to be unloaded, when it unexpectedly discharged. He was not consciously aiming at anything. He did not know the victim and had no feelings of hostility toward anyone at that time. He was not aware of the presence of another car and did not know that his shot had struck anyone. However, he was so upset about the accidental discharge that he immediately drove to a nearby shopping center and discarded his pistol in a trash dumpster. It was never recovered. When defendant was arrested in his truck a short time later, he repeatedly denied any involvement in the incident and specifically denied having fired a gun that evening. At the trial, he admitted that these denials and others he made to the officers that evening were lies.

In contrast, the prosecution elicited ample evidence from which the jury could conclude that defendant deliberately shot Baxter. There were two eyewitnesses to the shooting. Defendant and Baxter and one of these witnesses had been driving northbound on 1300 East in Salt Lake City. The witness saw Baxter's Chevrolet Nova pull in front of defendant's pickup truck at a lane reduction. Thereafter, for several blocks prior to the intersection at 2700 South, the eyewitness watched defendant's truck "tailgating" the Nova in a threatening manner, "coming up and almost hitting the Nova, making very jerky motions." The truck, which had its bright lights on, was lunging forward with its engine revving heavily, coming within about two feet of the Nova, slowing abruptly, and then

falling back. This was repeated about five times.

At 2700 South, all vehicles stopped for a red light. Defendant's pickup pulled up beside the Nova in the lane to its left. The eyewitness, from a position in the lane to the right of and slightly ahead of the Nova, saw defendant, with an angry expression on his face, staring down at the driver of the Nova. Defendant was bending forward and to his right with his arm extended, pointing down toward the Nova. After the witness observed this position for about three seconds, he heard a gunshot and saw the flash of the gun that was pointing directly at the man in the Nova. After the shot, the driver of the Nova immediately slumped to the right, and defendant's expression did not change.

The second eyewitness was southbound on 1300 East in the left-turn lane, facing the other vehicles as he waited for the light. There was a pickup truck in the inner lane facing him. He saw the driver, who was holding something in his hand, "reach across" with his arm extended. Then he saw a flash and heard a gunshot, and the truck "took off."

When defendant was arrested a short time later within a few blocks of the intersection, he had no weapon, but a spent cartridge from a .357 Magnum was in his pocket and a box of .357 Magnum shells was in his truck. There was no bullet hole or other damage to the passenger door or window of the truck. Defendant testified that the window had been rolled down prior to his driving up 1300 South, because he was too hot. (It was then about midnight on February 14, 1980.) The distance from the ground to the window was four feet on defendant's truck, but only three feet on Baxter's Nova. In view of this disparity in the height of the vehicles, a bullet passing through the open window of the pickup and entering the closed window of the Nova at the point of impact had to originate at about arm's length and shoulder height from the driver of the pickup. This fact corroborated the eyewitness accounts of the shooting.

Defendant argues that the trial court committed prejudicial error in its instruction No. 14, which defined "depraved indifference to human life." The State counters that even if this instruction was erroneous, the error was not reversible since even without the error there was no reasonable likelihood of a more favorable result for the defendant.

## I. THE JURY INSTRUCTION ON DEPRAVED INDIFFERENCE

The jury was instructed in accordance with U.C.A., 1953, § 76–5–203(1) that they could convict defendant of second degree murder if they found beyond a reasonable doubt that he had caused Baxter's death under one of the three "alternative forms of conduct." These were (a) intentionally or knowingly, (b) while intending to cause serious bodily injury and committing an act clearly dangerous to human life, or (c) "acting under circumstances evidencing a depraved indifference to a human life, [defendant] engaged in conduct which created a grave risk of death to Robert M. Baxter." (The instructions provided detailed definitions of the meanings of these terms.[1]) The general verdict gave no indication of which variation the jury relied upon in its finding of guilt.

Defendant argues that the court's definition of "depraved indifference," quoted hereafter, erroneously created a new mental state somewhere between "recklessly" and "knowingly." This argument and oth-

---

1. The jurors were properly instructed that a person engages in conduct intentionally "with respect to the nature of his conduct or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result." § 76–2–103(1). They were likewise instructed that a person engages in conduct knowingly "with respect to his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or the existing circumstances," and he acts knowingly "with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." § 76–2–103(2).

ers related to it require a detailed examination of various terms of our Criminal Code.

To be guilty of a crime, a defendant must have acted "intentionally, knowingly, recklessly or with criminal negligence with respect to each element of the offense ...." § 76-2-101. This general principle of criminal responsibility is specifically applied to criminal homicide by the definition in § 76-5-201: "A person commits criminal homicide if he intentionally, knowingly, recklessly, or with criminal negligence unlawfully causes the death of another."[2]

 Second degree murder is a "criminal homicide" in which the actor causes a death by one of four alternative forms of conduct. Section 76-5-203(1)(c), the depraved indifference provision, reads as follows:

(1) Criminal homicide constitutes murder in the second degree if the actor:

....

(c) Acting under circumstances evidencing a depraved indifference to human life, he engaged in conduct which creates a grave risk of death to another and thereby causes the death of another;

....

The general principles of criminal responsibility and the specific definition of second degree murder in this statute make clear that in order to be guilty of second degree murder a party must have acted with a particular mental state.

 In contrast to the specific references to "intent" in subsections (a) and (b), § 76-5-203(1)(c), quoted above, does not specify a particular mental state. Its reference to "depraved indifference" does not denote a subjective mental state. By their terms and their placement, the words "depraved indifference" refer to the objective circumstances under which the conduct causing the death occurred.

Thus, the Supreme Judicial Court of Maine, in an opinion by Chief Justice McKusick, held that similar language in Maine's Criminal Code referred to "the presence of some objectively measured standard of criminal culpability derived from the circumstances surrounding the victim's death." *State v. Crocker*, Me., 435 A.2d 58, 63 (1981). In an earlier case, that same court had approved a jury instruction that this statutory language "did not require the State to prove that [the defendant] was subjectively indifferent to the value of human life; it merely required that the jury find [defendant's] conduct, objectively viewed by a reasonable man, manifested a depraved indifference towards human life." *State v. Woodbury*, Me., 403 A.2d 1166, 1171 (1979).

Similarly, a New York court has given this construction to a comparable provision in that state's definition of second degree murder: "The emphasis in this subdivision is not upon the state of the defendant's mind, but upon the circumstances of the conduct. The element of 'depraved indifference' must be judged by the objective circumstances, not by the subjective state of the defendant's mind." *People v. Register*, 90 A.D.2d 972, 456 N.Y.S.2d 562, 564 (1982), following *People v. LeGrand*, 61 A.D.2d 815, 402 N.Y.S.2d 209, *cert. denied*, 439 U.S. 835, 99 S.Ct. 117, 58 L.Ed.2d 130 (1978). This interpretation is consistent with our own case law, which has referred to second degree murder as being indicated "when *the circumstances attending the killing* show an abandoned and malignant heart." *State v. Wardle*, Utah, 564 P.2d 764, 765 n. 1 (1977) (emphasis added).

Since depraved indifference second degree murder does not expressly specify a particular mental state, the culpable mental state required by the statute must be as provided in § 76-2-102: "Every offense not involving strict liability shall require a culpable mental state, and when the definition of the offense does not specify a culpable mental state, intent, knowledge, or

---

**2.** We note that § 76-2-101 was amended in 1983 to delete the words "with respect to each element of the offense" and to add the words "or with a mental state otherwise specified in the statute defining the offense." Section 76-5-201 was similarly amended. Since these changes were not in effect when the crime was committed, they are given no effect for purposes of this appeal.

recklessness shall suffice to establish criminal responsibility." We must therefore determine which of these three mental states is superimposed on the depraved indifference provision by § 76–2–102. This effort is prescribed by our statutory duty to construe the provisions of the Criminal Code "according to the fair import of their terms to promote justice and to effect the ... general purposes of section 76–1–104" to "[d]efine adequately the conduct and mental state which constitute each offense" and to "[p]rescribe penalties which are proportionate to the seriousness of offenses ...." §§ 76–1–106; 76–1–104(2) & (3).

At the outset, we rule out "recklessness." In its originally enacted version, the depraved indifference provision referred to one who "recklessly engaged in conduct which creates a grave risk of death ...." The word "recklessly" was deleted by amendment in 1979 to avoid confusion with the reckless element of manslaughter and to require proof of a higher degree of culpability.[3] We have held that this deletion "makes it clear that reckless conduct is not sufficient to prove the offense of murder in the second degree." *State v. Bindrup*, Utah, 655 P.2d 674, 676 (1982).

The context of the depraved indifference provision persuades us to rule out "intent" as the culpable mental state. Reading "intentionally" (as defined in § 76–2–103(1)) into the position where "recklessly" was eliminated might transform into second degree murder some kinds of conduct that would otherwise constitute only manslaughter or negligent homicide. This could occur because, under the "intent" interpretation, a person might be found guilty of depraved indifference homicide for intentionally engaging in conduct that in fact created a grave risk of death to another, even without proof that the actor knew of the risk. Such conduct is more properly characterized as manslaughter, § 76–5–205(1)(a) ("recklessly"), or negligent homicide, § 76–5–206(a) ("with criminal negligence"). Transforming this conduct into second degree murder could seriously disrupt the statutory structure of graded definitions of homicide and would also run counter to the rules of statutory construction in § 76–1–104, quoted earlier.

In contrast to the two unacceptable alternatives, the third mental state specified by § 76–2–102, "knowledge," fits perfectly into the sense of § 76–5–203(1)(c). It is clear from the structure, purpose, and history of the depraved indifference provision that the required culpable mental state (which we hold to be "knowledge") refers to the nature of the actor's conduct or to the circumstance surrounding it, or both; it does not refer to the result produced by that conduct. *See generally Neitzel v. State*, Alaska App., 655 P.2d 325, 333 (1982). As the statute was originally enacted, the word "recklessly" preceded the words "engaged in conduct which creates a grave risk of death to another." If we substitute the word "knowingly" and its definition at that same place, § 76–5–203(1)(c) in effect specifies the following definition for this variation of second degree murder:

> Acting under circumstances evidencing a depraved indifference to human life [the defendant] [knowingly, meaning "aware of the nature of his conduct or the existing circumstances," § 76–2–103(2) ] engaged in conduct which creates a grave

---

**3.** Just prior to the unanimous vote on the amendment in the House, Representative Robert Garff, the bill's proponent, stated:

> Its a very simple change in the bill, and all we're doing is deleting the word "reckless" from the statute. Case law is rather clear in defining what constitutes a depraved indifference to human life. Actually, that standard, which is common in the common law books, is a standard which the common law holds as a higher degree of standard than the reckless standard that follows it [in the statute]. And

> so really its a confusing statement in the law showing two standards .... So what we're really trying to do here is only make it one standard, and that standard is the highest standard, which is the depraved indifference to human life, and eliminate the confusion in the statute by reducing the reckless standard out.

Utah House of Representatives, Records of Third Reading of H.B. 119, Feb. 22, 1979 (recording on file with Utah House of Representatives).

risk of death to another and thereby causes the death of another.

Thus, under our interpretation, the culpable mental state prescribed by statute for depraved indifference homicide is the sensible requirement that the defendant acted with knowledge that his conduct created a grave risk of death to another.[4]

■ Consistent with this analysis, a jury may properly convict of second degree murder under § 76–5–203(1)(c) if the State proves each of the following elements beyond a reasonable doubt:

1. The defendant engaged in conduct that created a grave risk of death to another; and

2. At the time he so acted, the defendant knew that his conduct created a grave risk of death to another; and

3. The circumstances under which the defendant acted, objectively viewed by a reasonable man rather than subjectively by the actual state of defendant's mind, were such as to evidence a depraved indifference to human life; and

4. The defendant thereby unlawfully caused the death of another.

■ Was the "depraved indifference" instruction given in this case consistent with the above elements? The trial court gave the following instruction:

I have previously used the term "depraved indifference" in these instructions. The term is not specifically defined by Statute. Thus, the phrase "depraved indifference" is a concept which must be left largely to the experience and common sense of the jury.

To engage in conduct with a "depraved indifference to human life," a person must do more than act "recklessly," but he need not have as his conscious objective or desire to cause the result; nor, need he be aware that his conduct is reasonably certain to cause the result.

Rather, the greatness of the risk which the defendant's actions create and the lack of justification for the creation of

the risk is the test to be applied in determining whether the defendant's conduct evidences a "depraved indifference to human life."

The first paragraph of this instruction is correct.

The second paragraph likewise contains no error. It uses terms from the statutory definitions in § 76–2–103 to distinguish depraved indifference homicide from other variations of homicide. Thus, the defendant "must do more than act 'recklessly' " (manslaughter), but he need not have the "conscious objective" of causing the result of the victim's death (an element of first degree murder and of the "intentional" variation of second degree murder in subsection (a)). The statement that the defendant need not be aware that his conduct is "reasonably certain" to cause the result correctly distinguishes depraved indifference second degree murder ("grave risk of death") from knowingly causing a death as defined in subsection (a).

The "knowingly" requirement of subsection (a) specifies a prospect of death approaching certainty ("reasonably certain to cause"), but this subsection focuses on the prospective death of a particular person—the one whose death was actually caused. In contrast, subsection (c) is satisfied by a "grave risk" of death, but this subsection can refer to the risk defendant's conduct imposes on people generally, not just on the person whose death is actually caused. *Cf. State v. Russell*, 106 Utah 116, 129, 145 P.2d 1003, 1009 (1944). The second paragraph of the instruction makes that distinction. The record indicates that this paragraph was drafted in reliance upon the concurring opinion in *State v. Nicholson*, Utah, 585 P.2d 60, 65 (1978) (Wilkins, J.), which explains the distinctions discussed above. This paragraph contains nothing inconsistent with our construction of § 76–5–203(1)(c).

---

**4.** This formulation differs from the Model Penal Code, which requires only "recklessness" (i.e., an awareness of a "substantial and unjustifiable

risk") to establish the culpable mental state for extreme indifference murder. Model Penal Code § 210.2(1)(b) & Comments (1980).

The third paragraph, which the record indicates was also drafted in reliance upon the concurring opinion in *State v. Nicholson, supra,* likewise contains no error. Its "test" of "the greatness of the risk which the defendant's actions create and the lack of justification for the creation of the risk" is wholly consistent with our conclusion that depraved indifference must be determined by an objective weighing of the circumstances under which the defendant acted. We therefore find no error in the jury instruction on the meaning of "depraved indifference."

■ The remaining question is whether the court's instructions were in error in not expressly treating the element of knowledge as we have defined it in this opinion. We find no error in that circumstance. In the context of the other instructions and the evidence in this case, the jury could hardly have misunderstood that the defendant had to be aware that his conduct created a grave risk of death to another, as described in the statutory definitions contained in the instructions. Moreover, the jury could not have avoided finding that the defendant, an experienced marksman, was in fact aware of the grave risk of death to another posed by his discharging a .357 Magnum pistol in the circumstances described in the evidence. These realities, in company with the fact that the defense made no request for an instruction on the defendant's knowledge or awareness of the grave risk of death posed by his conduct, persuade us that any error in the omission of an express instruction on the element of knowledge was not prejudicial in this case. *State v. Pierren,* Utah, 583 P.2d 69, 71 (1978); *State v. Blea,* 20 Utah 2d 133, 137, 434 P.2d 446, 449 (1967); *State v. Dubois,* 98 Utah 234, 245–46, 98 P.2d 354, 359–60 (1940). *Cf. Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) (failure to instruct on causation element of depraved indifference homicide).

## II. PREJUDICIAL ERROR

Even if the instruction on depraved indifference second degree murder had been in error, the error was not prejudicial.

■ Rule 30 of the Utah Rules of Criminal Procedure directs that "[a]ny error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." § 77–35–30. We have interpreted this rule to mean that error is reversible only if a review of the record persuades the court that without the error there was "a reasonable likelihood of a more favorable result for the defendant." *State v. Hutchison,* Utah, 655 P.2d 635, 637 (1982). We have applied this rule to errors in jury instructions in criminal cases. *State v. Brafford,* Utah, 663 P.2d 68, 70 (1983); *Codianna v. Morris,* Utah, 660 P.2d 1101, 1113 (1983); *State v. Cornish,* Utah, 580 P.2d 606, 607 (1978).

■ Although the general verdict in this case gave no indication of which variation of second degree murder the jury relied upon in its conviction, the record contains abundant evidence—both eyewitness testimony and physical evidence—from which the jury could conclude that defendant caused Baxter's death intentionally or knowingly as defined in subsection (a).

This case is strikingly similar to *State v. Weddle,* 29 Utah 2d 464, 511 P.2d 733 (1973), in which this Court held that the strength of the evidence against a defendant accused of murder rendered an error with respect to instructions nonprejudicial. After defendant and his companion robbed a service station and while they were attempting to escape, their stolen automobile ran out of gas. A deputy sheriff stopped nearby, and the defendant approached his car for assistance. When the deputy inquired about the ownership of the automobile, defendant drew a revolver. The deputy grasped the gun momentarily, but the defendant pulled it away and shot him five times. Defendant's companion also shot the deputy. The two then took the patrol car and fled. At his trial for first degree murder, the defendant testified that he had no prior intent to kill the deputy. He simply panicked and fired when he thought the deputy was attempting to draw his own

weapon. As in this case, the charge was submitted to the *Weddle* jury in three separate categories—(a) a killing that "was willful, deliberate, malicious and premeditated," (b) a killing committed during a robbery, and (c) a killing "perpetrated by an act greatly dangerous to the lives of others and evidencing a depraved mind, regardless of human life."

On appeal, this Court noted that the trial court correctly defined the terms in subsections (a) and (b), but concluded that it was error to instruct under subsection (c) since there was no evidence of an act potentially dangerous to other persons generally.[5] Nevertheless, the Court held:

> While it was error to so instruct the jury, in the light of the other instructions, it would not appear that there was any likelihood that the jury was misled thereby. The evidence of record amply supports the verdict of the jury that the defendant was guilty of murder in the first degree and the presumption of prejudice should not be indulged.

29 Utah 2d at 467, 511 P.2d at 735. *Accord State v. Brafford,* 663 P.2d at 70; *State v. Schaffer,* Utah, 638 P.2d 1185, 1187 (1981); *State v. Cornish,* 580 P.2d at 607; *State v. Anselmo,* Utah, 558 P.2d 1325 (1977). *See also State v. Minnish,* Utah, 560 P.2d 340 (1977) (affirming second degree murder conviction for deliberate shooting where jury instructed on depraved indifference); *State v. Anderson,* 27 Utah 276, 495 P.2d 804 (1972) (affirming conviction where jury instructed on alternative theories of first degree murder).

Courts in other states have reached similar conclusions. For example, in two Illinois cases defendants shot individuals at close range and were charged with attempted murder. The juries were erroneously instructed that an attempted murder conviction could be based upon an intent to do bodily harm, instead of being based exclusively upon an intent to kill. On appeal, the appellate courts nevertheless affirmed the convictions because of the overwhelming evidence that the defendants in-

tended to kill. *People v. Dallas,* 85 Ill. App.3d 153, 176–77, 40 Ill.Dec. 110, 127, 405 N.E.2d 1202, 1219 (1980), *cert. denied,* 450 U.S. 1000, 101 S.Ct. 1708, 68 L.Ed.2d 202 (1981); *People v. Tillman,* 48 Ill. App.3d 594, 596–97, 6 Ill.Dec. 580, 582–83, 363 N.E.2d 109, 111–12 (1977). In reaching these conclusions, the courts cited such things as the short distance from which the shot was fired, the area of the body struck, the presence of eyewitnesses, and the fact that the evidence was not closely balanced. *Id.* at 597, 6 Ill.Dec. at 582, 363 N.E.2d at 111; *People v. Dallas, supra. Accord, People v. Spencer,* 60 Cal.2d 64, 31 Cal. Rptr. 782, 797–98, 383 P.2d 134, 149–50 (1963), *cert. denied,* 377 U.S. 1007, 84 S.Ct. 1924, 12 L.Ed.2d 1055 (1964); *People v. Cooley,* 211 Cal.App.2d 173, 27 Cal.Rptr. 543, 560–61, 564–65 (1962) (*disapproved on other grounds, People v. Lew,* 68 Cal.2d 774, 69 Cal.Rptr. 102, 441 P.2d 942 (1968).

In view of the nature and quantity of evidence in this case, we conclude that there is no reasonable likelihood that a depraved indifference instruction that included an express treatment of the knowledge element would have produced a more favorable result for the defendant. Consequently, any error in that instruction was not prejudicial and cannot serve as the basis for reversal.

### III. VOID FOR VAGUENESS

Finally, defendant contends that "depraved indifference to human life," as defined in the court's instructions, was void for vagueness and thus violated defendant's right to due process of law.

This case does not fall in the familiar "vagueness" pattern where the challenged statute could prohibit both lawful and unlawful activities, such as statutes prohibiting vagrancy, certain types of expression, or the like. Similarly, defendant's argument does not invoke his interest in knowing what conduct is prohibited and what is not prohibited, so he can act accordingly. *Compare Papachristou v. City of Jack-*

---

**5.** This requirement was later eliminated by statutory amendment. § 76–5–203(1)(c).

*sonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *State v. Packard,* 122 Utah 369, 250 P.2d 561 (1952).

 This defendant's vagueness argument is raised in a case where the only question is whether the definition is sufficiently explicit to guide a jury in determining the degree of criminal homicide committed by one who has concededly caused the death of another. In that context, we conclude that this definition did not violate the companion principle, articulated in *Papachristou, Packard,* and similar cases, that offenses must be defined with sufficient precision to permit uniform interpretation and application by those charged with enforcing them. This conclusion is consistent with the holdings of other courts that have considered and rejected "void for vagueness" challenges to similar terms in other homicide statutes. *State v. Walton,* 133 Ariz. 282, 650 P.2d 1264 (1982); *People v. Castro,* Colo., 657 P.2d 932 (1983); *State v. Crocker,* Me., 435 A.2d 58 (1981).

Defendant's conviction of second degree murder is affirmed.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, J., concurs in the result.